# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* KIMMEL, Minors.

UNPUBLISHED
January 12, 2017

No. 333523
St. Clair Circuit Court
Family Division
LC No. 14-000278-NA

Before: BOONSTRA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Respondent appeals as of right an order terminating his parental rights to the two minor children under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g) (parent failed to provide proper care or custody), and (j) (reasonable likelihood child will be harmed if returned to parent). We affirm.

Defendant was incarcerated at the time the children came into care following a domestic violence dispute between their mother and her boyfriend.

Respondent argues that the trial court clearly erred when it found clear and convincing evidence to terminate his parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j). We disagree.

"This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). A trial court's findings of fact are clearly erroneous if "we are definitely and firmly convinced that it made a mistake." *Id*. at 709-710.

In a termination proceeding, petitioner has the burden of proving at least one statutory ground for termination by clear and convincing evidence. *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). And in this case, termination of respondent's parental rights was proper under MCL 712A.19b(3)(c)(*i*), which provides that a parent's rights may be terminated if "182 or more days have elapsed since the issuance of an initial dispositional order" and "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age."

It is undisputed that the order terminating respondent's parental rights was entered more than 182 days after the initial dispositional order was entered. The conditions that led to this adjudication were respondent's continued issues with substance abuse that led to his

-1-

incarceration, irregular contact with the children, and the lack of a parental bond with them. The record shows that these conditions did not change. During the pendency of this case, respondent was released from jail on probation. He was required to participate in an outpatient substance abuse program, but was terminated from the program after submitting a "diluted drug screen" and missing a class. He was then transferred to a residential substance abuse program, where he continued to test positive for cocaine, opiates, and THC, before he left the facility. During this time, parenting-time sessions were scheduled and, other than attending one, respondent missed them all—without even calling to cancel or explain. At the one visit, respondent and the children did not show a parent-child bond. In fact, the children called respondent by his nickname, "Stewie." Subsequently, respondent was jailed for violating the terms of his probation. At the time of the termination hearing, respondent was still incarcerated, without an anticipated release date. And respondent testified that he still suffered from issues arising out of substance abuse so, at the very least, he would still need counseling for that issue once he was released.

Further, there was no reasonable likelihood that the conditions that led to the adjudication would be rectified within a reasonable time considering the children's age. MCL 712A.19b(3)(c)(*i*). The children were five years old at the time of the termination proceedings, and had been under the guardianship of their aunt for about 1½ years. The trial court noted that this was approximately one-third of the children's lives without contact with respondent. Further, the evidence showed that respondent would be unlikely to remedy his issues in a reasonable time. Even when respondent was released from jail during these proceedings, he showed no intent or ability to avoid substance abuse and to form a meaningful bond with the children. Specifically, after his release, respondent almost immediately started abusing drugs again, testing positive for cocaine, opiates, and THC. He showed no intent to develop a bond with the children, skipping all but one scheduled parenting-time session, and made no other effort to reach out to them by sending gifts, cards, or anything of the like. In summary, clear and convincing evidence supported termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*).

Because only one statutory ground must be established by clear and convincing evidence, *In re Ellis*, 294 Mich App at 32, we need not address whether the trial court clearly erred in finding that MCL 712A.19b(3)(g) and (j) were also established; nevertheless, we conclude that the trial court did not clearly err. In brief, respondent never provided proper care or custody for the children and there was no reasonable expectation that he would be able to within a reasonable time considering their ages. See MCL 712A.19b(3)(g). Respondent provided no monetary support except for two or three child support payments shortly after their births and there was no evidence that he had any ability to provide full-time care. There was no evidence that he had money, housing, or parenting skills. He did not even write to the children or buy gifts for their birthdays. And when respondent had the chance to be a father after being released from jail, he instead abused drugs and was returned to jail within a few months of being released.

Further, as the trial court held, there was a reasonable likelihood, based on respondent's conduct, that the children would be harmed if returned to him. See MCL 712A.19b(3)(j). The record evidence included that respondent allowed his other children to remain in his home with a loaded weapon and drugs. Furthermore, respondent, upon being released after that crime, showed no indication that he would change his ways. Instead, respondent almost immediately began using drugs again, was terminated from his substance abuse program, and was eventually

-2-

arrested and jailed again for violating probation. Indeed, testimony from respondent's own sister revealed that she was concerned for the welfare of any children under respondent's custody given his actions with respect to his other children.

Respondent argues that none of the statutory grounds were established by clear and convincing evidence because the trial court relied solely upon the fact that he was incarcerated. For this argument, respondent relies on our Supreme Court's decision in *In re Mason*, 486 Mich 142; 782 NW2d 747 (2010). In that case, our Supreme Court held that "[t]he state is not relieved of its duties to engage an absent parent merely because that parent is incarcerated." *Id*. at 152. Respondent's argument is without merit. In *Mason*, the respondent-father was only permitted to participate in two of the hearings via telephone from prison. *Id*. at 153. And there was a 16-month gap between the first hearing and the second hearing. *Id*. at 155. The *Mason* Court reasoned that the respondent-father "missed the crucial, year-long review period during which the court was called upon to evaluate the parents' efforts and decide whether reunification of the children with their parents could be achieved. Indeed, respondent was practically excluded from almost every element of the review process[.]" *Id*. Furthermore, at the termination hearing, the DHHS caseworker admitted that he had never even spoken to the respondent-father, but still determined that termination would be best for the minor children. *Id*. at 150, 159. Given these facts, the Court determined that the termination of the respondent-father's parental rights was premature, because he had not been given the opportunity to participate and be properly evaluated. *Id*. at 159.

In this case, however, respondent fully participated in the proceedings. From the beginning of the proceedings, the trial court expressed concern regarding respondent's incarceration. During the initial adjudication proceeding, the trial court adjourned respondent's portion because he was not in attendance from jail and had not yet had an attorney appointed. Only after respondent was able to participate by telephone and discuss the situation with his attorney was respondent permitted to consent to jurisdiction. Further, respondent was present via telephone for every hearing that took place regarding the children. Additionally, the trial court entered a writ of habeas corpus so that respondent could appear in person for the termination proceedings. With regards to contact by DHHS with respondent, a DHHS caseworker testified that she sent monthly letters to respondent regarding what courses and classes he should engage in while in prison. Further, the record reveals that DHHS caseworkers and respondent discussed the need for him to complete courses while in prison to exhibit his continued efforts to becoming a suitable parent. Indeed, at least once on the record, respondent clearly stated that he understood what DHHS was recommending he complete. As can plainly be seen from this factual scenario, respondent was not treated in the same manner as the respondent-father in *In re Mason*; therefore, respondent's reliance on this case is misplaced.

Respondent also argues that it was not in the best interests of the children to terminate his parental rights. Again, we disagree.

This Court reviews a trial court's determination regarding the children's best interests for clear error. *In re White*, 303 Mich App at 713. A decision is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made. *In re Mason*, 486 Mich at 152 (citation omitted).

-3-

A trial court must order termination of parental rights if a statutory ground for termination is established by clear and convincing evidence and the court finds by a preponderance of the evidence that termination is in the children's best interests. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). At the best-interest stage, the focus is on the child, not the parent. *Id*. at 87. In making the best-interests determination, the court may consider a number of different factors, such as the parent's history, parenting ability, and participation in a treatment program, the children's ages and bond to the parent, as well as the length of time the children were in care and their need for permanency, stability, and finality. See *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012); *In re VanDalen*, 293 Mich App 120, 141-142; 809 NW2d 412 (2011). In addition, placement with a relative weighs against termination under MCL 712A.19a(6)(a). Indeed, "the fact that the children are in the care of a relative at the time of the termination hearing is an 'explicit factor to consider in determining whether termination was in the children's best interests.' " *In re Olive/Metts Minors*, 297 Mich App at 43, quoting *Mason*, 486 Mich at 164.

In making its determination, the trial court relied on the facts that respondent did not have a parental bond with the children, the children needed stability and structure in their lives, and respondent did not provide that with his incarceration, substance abuse, and the uncertainty associated with those problems. Those determinations were particularly supported by respondent's actions when he was released from jail. Rather than engage with the children and form a bond with them, respondent relapsed into abusing drugs and avoiding interaction with the children. Further, respondent made no attempts to provide care or custody for the children during that time, nor did he do so before his incarceration, when he failed to provide financial support. The lack of bond between respondent and the children was also exhibited by evidence that showed that the children did not refer to respondent as their father. Rather, they considered their mother's boyfriend to be a father figure, and respondent to be "Stewie."

At the time of the hearing, the children had been placed with an aunt for 1½ years. It was undisputed that they had formed a bond with her over that time period and had only seen respondent one time, in November of 2014. While the trial court recognized that the children were residing with a relative, it also relied on her testimony that continued guardianship would not be in the children's best interests because they deserved a chance for stability in their living situation. As such, despite the children's guardianship with a relative weighing against termination pursuant to MCL 712A.19a(6)(a), the trial court properly determined that a continued guardianship would not be in the children's best interests. Given these facts, the preponderance of the evidence established that the children would be best served by terminating respondent's parental rights. As the trial court noted, they would be available for adoption, given that mother's rights were already terminated, which was more likely to lead to a healthy, stable situation. Testimony from a DHHS caseworker revealed that the children needed that stability, and did not benefit from the uncertainty of respondent's presence in their life. For all of these

reasons, the trial court did not clearly err in determining that it was in the children's best interests to terminate respondent's parental rights.

Affirmed.

/s/ Mark T. Boonstra
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly