*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re MILES, Minors.

UNPUBLISHED
March 5, 2019

No. 344315
Oakland Circuit Court
Family Division
LC No. 2016-846650-NA

Before: JANSEN, P.J., and BECKERING and O'BRIEN JJ.

PER CURIAM.

Respondent-father appeals by right the trial court's order terminating his parental rights to the minor children, CAM and ELM, pursuant to MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*ii*). Because we conclude that there are no errors warranting relief, we affirm.

## I. FACTS

Respondent and the mother of the children at issue (hereafter "mother") lived together between 2012 and 2016. During their relationship, mother gave birth to respondent's two daughters, CAM and ELM. Mother also had two older children, TTP and LMP, who lived with their biological father and paternal grandmother. TTP and LMP visited mother one to two weekends a month. Respondent admitted that he occasionally assisted in caring for LMP when she visited on the weekends.

In February 2016, respondent's relationship with mother ended and he moved out of the family home. CAM and ELM remained in mother's care. Respondent continued to visit his children at mother's house. Because LMP visited mother on weekends and holidays, she would occasionally be present when respondent visited CAM and ELM.

In August 2016, respondent attended a birthday party for ELM at mother's home. TTP and LMP left mother's home on Sunday August 28, 2016. Sometime after LMP returned to her father's care, LMP told her paternal grandmother that she did not want to take a bath because her "pee pee" hurt. A few days later, on September 2, 2016, LMP disclosed to her grandmother and father that she had been sexually abused and she identified respondent as the perpetrator. LMP told her grandmother that respondent "put his finger in my front, and then in my butt, and my front again, then he went with his pee-pee real hard," and "it hurt all the way up" to her "belly

-1-

button." Thereafter, LMP was examined by a sexual assault nurse examiner and was interviewed by a forensic examiner. During these examinations, LMP repeated the allegations against respondent. In addition, LMP reported that respondent "kissed me in my private, and I told him not to," but "he didn't listen," and that respondent held her down.

A police detective spoke with respondent on September 9, 2016. Respondent denied sexually assaulting LMP. Later, however, he admitted that he digitally penetrated LMP's vagina and buttocks, but claimed that the contact was accidental. Respondent explained that when LMP was three or four years old, while assisting the child with wiping, his finger accidentally went into her vagina and buttocks. Respondent stated that his finger penetrated LMP's vagina and anus approximately ½ to ¾ of an inch. After LMP's disclosures, respondent was arrested and incarcerated on sexual assault charges. The charges were dismissed at the preliminary examination.

Petitioner filed a petition seeking jurisdiction over the children and requesting termination of respondent's parental rights at the initial dispositional hearing. At a separate hearing, the court determined that statements made by LMP to LMP's grandmother, two forensic interviewers, and the sexual assault nurse examiner regarding the sexual abuse had the requisite indicia of trustworthiness to be admissible pursuant to MCR 3.972(C)(2). Thereafter, the trial court asserted jurisdiction over the children, and then eventually found that statutory grounds for termination of respondent's parental rights had been established under MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*ii*). The court also found that termination of respondent's parental rights was in the children's best interests. Respondent appeals that decision.

## II. ANALYSIS

## A. STATUTORY GROUNDS

Respondent first argues that the trial court erred when it found that the statutory grounds for termination were established by clear and convincing evidence. To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination has been established by clear and convincing evidence. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016). This Court reviews the trial court's findings under the clearly erroneous standard. MCR 3.977(K). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been committed. *In re Miller,* 433 Mich 331, 337; 445 NW2d 161 (1989).

The trial court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*ii*), which, at the time the trial court entered its order, permitted termination of parental rights under the following circumstances:

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

(*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

* * *

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

(k) The parent abused the child or a sibling of the child and the abuse included 1 or more of the following:

* * *

(*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.[1]

After reviewing the record, we conclude that the trial court did not err when it terminated respondent's parental rights under the foregoing grounds.

The trial court found that respondent sexually abused LMP, who was a half-sibling of respondent's children, CAM and ELM. The record supports these findings. LMP disclosed to

---

[1] MCL 712A.19b(3)(g) and (k) were amended by 2018 PA 58, effective June 12, 2018. As amended, these sections now provide:

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent:

* * *

(*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

-3-

her paternal grandmother, the nurse examiner, and a forensic interviewer that respondent put his finger in her "pee pee" and "butt." When LMP stated that her "pee pee" hurt, she pointed to her vagina. LMP also disclosed to the forensic examiner that respondent put his "pee pee" in her "pee pee," and that it happened more than once. LMP's multiple statements were consistent. She described the same type of violation and she employed the same child-like vocabulary. In addition, the expert forensic interviewer found no evidence that LMP had been coached.

The testimony of the nurse examiner corroborated LMP's statements that she had been the victim of sexual abuse. LMP reported pain in her vaginal area. During an examination of LMP's genitals, the nurse examiner noted redness, abrasions, some swelling, and "notches." Approximately two-thirds of the vagina was red. The nurse examiner testified that the redness, abrasions, and swelling could only have been caused by trauma to the vagina. Only the "notches" could have been naturally occurring, but they too could have been caused by trauma. The nurse examiner opined that LMP's injuries were consistent with sexual assault.

The court also found compelling respondent's admission that when LMP was approximately three or four years old, he digitally penetrated her vagina and anus. Respondent admitted that about ½ to ¾ of an inch of his finger penetrated LMP's vagina and anus while he was wiping her during her potty-training. The court acknowledged respondent's claim that the penetration was accidental, but then concluded that respondent's position was implausible. Respondent's claim of "accidental penetration" is inconsistent with the traditional manner in which an adult might assist a toddler in wiping herself. Moreover, respondent's explanation appears self-serving when coupled with LMP's statements regarding the manner in which respondent violated her.

Further, respondent had the opportunity to physically abuse LMP. He lived with LMP's mother for approximately four years. During that time, LMP would visit her mother and respondent one or two weekends a month. After respondent and mother's relationship ended, respondent continued to have parenting time with his children. On occasion, LMP's visits with her mother would coincide with respondent visiting his children. Thus, despite assertions to the contrary, respondent did have opportunities to sexually abuse LMP. Considering the totality of the evidence, the trial court did not clearly err when it found that respondent had sexually abused LMP and that the abuse included criminal sexual penetration.

Based on the foregoing evidence, the trial court did not clearly err when it found clear and convincing evidence to terminate respondent's parental rights pursuant to MCL 712A.19b(3)(b)(*i*) and (k)(*ii*). Because petitioner need establish only one ground for termination under MCL 712A.19b(3), it is unnecessary for us to address the remaining grounds for termination.

## B. BEST INTERESTS

Next, respondent challenges the trial court's finding that termination of his parental rights was in the children's best interests. We find no merit to this challenge. "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of the parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5).

Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). This Court reviews for clear error a trial court's finding that termination of parental rights is in a child's best interests. *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009).

A court may consider several factors when deciding if termination of parental rights is in a child's best interests, including the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability and finality, and the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). The court may also consider psychological evaluations, the child's age, continued involvement in domestic violence, and a parent's history. *In re Jones*, 286 Mich App at 131.

The trial court did not clearly err when it found that termination of respondent's parental rights was in the children's best interests. The children had been in care for 19 months and there was no parent-child bond between respondent and the children. Because respondent was prohibited from visiting his children, he blames the system for a diminished parent-child bond. However, this assertion ignores the role that respondent played in the court's decision to deny parenting time. There was credible evidence that respondent sexually abused his children's half-sister and, according to the evaluating psychologist, respondent's perspective that he has not engaged in inappropriate behavior suggested that he would not change his behavior or be amenable to benefitting from a treatment plan.

Lastly, respondent argues that because the permanency plan for his children included reunification with their mother, termination of his parental rights to these children was not warranted. Pursuant to MCL 712A.19a(8)(a), a child's placement with relatives weighs against termination. Further, while the fact that a child is living with a relative must be considered, a trial court may still terminate parental rights in lieu of placement with a relative if it finds that termination is in the child's best interests. *In re Olive/Metts*, 297 Mich App at 43. In this case, we note at the outset that respondent's children had yet to be reunited with their mother. Therefore, respondent's argument lacks the necessary factual predicate. Moreover, because a child's biological mother is not a "relative" as defined under MCL 712A.13a(1)(j), the trial court was not required to weigh the children's placement, or potential placement, with their mother against termination. *In re Schadler*, 315 Mich App at 413.

Affirmed.

/s/ Kathleen Jansen
/s/ Jane M. Beckering
/s/ Colleen A. O'Brien