*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* N. R. FISHER, Minor.

UNPUBLISHED
July 21, 2022

No. 359677
Macomb Circuit Court
Family Division
LC No. 2020-000044-NA

Before: JANSEN, P.J., and O'BRIEN and HOOD, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to the minor child, NF. The court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*) (conditions that led to the adjudication continue to exist), (i) (parental rights to a sibling have been terminated due to abuse or neglect), and (j) (reasonable likelihood the child will be harmed if returned to the parent's home). We affirm.

This case arises from the removal of NF days after her birth because she was born testing positive for tetrahydrocannabinol (THC), and respondent's parental rights had been terminated to her other children. Petitioner filed an initial petition for termination at adjudication; however, the trial court denied the petition because it found that termination was not in NF's best interests. Respondent was therefore offered a parent-agency treatment plan and referrals for services. Despite being given time to comply and benefit from services, respondent did not participate or complete several aspects of her treatment plan, and petitioner filed a supplemental petition to terminate parental rights. The trial court found statutory grounds existed to terminate, and that termination was in the child's best interests. Respondent now appeals the order terminating her parental rights.

Respondent first argues that the trial court erred when it found statutory grounds existed to terminate her parental rights. We disagree.

To terminate parental rights, the trial court must find that at least one statutory ground under MCL 712A.19b(3) has been established by clear and convincing evidence. *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). This Court reviews for clear error a trial court's finding whether a statutory ground for termination has been proven by clear and convincing evidence. MCR 3.977(K). A finding is clearly erroneous if the reviewing court is left with a definite and

firm conviction that a mistake has been committed. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (i), and (j), which permit termination of parental rights when the following conditions are satisfied:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> \* \* \*

> (i) Parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and the parent has failed to rectify the conditions that led to the prior termination of parental rights.

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The trial court did not clearly err when it terminated respondent's parental rights under these grounds.

It is undisputed that respondent's parental rights to three other children were previously terminated because attempts to rehabilitate respondent were unsuccessful. MCL 712A.19b(3)(i). Respondent admitted that she used marijuana during all of her pregnancies and that all of her children, including NF, tested positive for THC at birth.

Petitioner presented clear and convincing evidence that the conditions that led to the adjudication of NF and the conditions that led to the termination of respondent's parental rights to her other children continued to exist and there was no reasonable likelihood that they would be rectified within a reasonable time considering NF's age. MCL 712A.19b(3)(c)(*i*). The principal conditions that led to NF's adjudication and the termination of respondent's parental rights to her other children were respondent's mental health issues and domestic violence. Respondent had been diagnosed with major depressive disorder, cannabis use disorder, and borderline intellectual functioning. A psychologist and psychiatrist who evaluated respondent recommended that she participate in outpatient therapy for mental health treatment and explore the possible use of medication to address her social anxiety, paranoia, and emotional instability. Respondent also had a significant domestic violence history with her former partners.

Respondent's caseworker in her prior case and her present caseworker both testified that respondent failed to comply with recommendations for mental health, domestic violence, and substance abuse counseling. In her prior Oakland County case, respondent refused to participate in mental health counseling, drug counseling, and domestic violence counseling. Respondent

submitted approximately five drug screens in two years. Whenever the caseworker addressed domestic violence counseling with respondent, she denied that there was any domestic violence in her relationship, despite the many complaints to Child Protective Services because of police calls to respondent's home, including one occasion when respondent stabbed her former partner during a domestic violence incident.

The present caseworker's testimony was much the same. Respondent completed the required assessments, but did not follow through with any of the recommendations. She did not participate in mental health, domestic violence, or substance abuse counseling. She also did not submit to any of the 45 requested drug screens. While respondent provided documentation of employment on several occasions, she never provided verification of her income.

Respondent testified that in September 2021, a year after adjudication, she began to follow the directives contained in her parent-agency agreement. Although respondent understood that she was required to document and verify her compliance with her caseworker, she decided that she wanted to prove to the court that she could do it on her own. Respondent explained that she did not participate in the required drug testing because she believed the main focus should have been on anger management and domestic violence. Respondent offered one certificate of completion of an anger management class as evidence of her compliance with the parent-agency agreement. She did not provide any other verification of the services that she said she had been participating in since her release from jail two months previously. Clearly, the court did not find respondent's testimony that she had independently begun complying with the parent-agency agreement to be credible. This Court gives due regard to the special opportunity of the trial court to assess the credibility of the witnesses who appeared before it. *In re Medina*, 317 Mich App 219, 227; 894 NW2d 653 (2016).

The testimony of the foster care workers, along with respondent's own testimony, clearly demonstrated that respondent did not adequately address the issues that led to the termination of her parental rights to three of her other children, and to the adjudication and removal of NF from her care. More significantly, the evidence established that respondent understood what was required of her to avoid termination of her parental rights, but she chose not to comply. In the final hearing, respondent repeatedly stated that she did not comply with the parent-agency agreement by communicating and documenting her progress with the caseworker because she was focusing on herself and choosing the requirements that she thought were important. Under these circumstances, the trial court did not clearly err by concluding that respondent did not rectify the conditions that led to the prior termination of her parental rights or that led to NF's adjudication, that she was not reasonably likely to rectify those conditions within a reasonable time, and that there was a reasonable likelihood that NF would be harmed if returned to respondent's care. MCL 712A.19b(3)(c)(*i*), (j).

Respondent argues that the trial court's order terminating her parental rights violated a provision of the Michigan Regulation and Taxation of Marihuana Act, MCL 333.27951 *et seq.* MCL 333.27955(3) provides:

> A person shall not be denied custody of or visitation with a minor for conduct that is permitted by this act, unless the person's behavior is such that it

creates an unreasonable danger to the minor that can be clearly articulated and substantiated.

Contrary to respondent's argument that a person can never be denied custody or visitation for marijuana use, this statute provides that a person can be denied custody or visitation if the person's behavior creates a clearly articulated and substantiated unreasonable risk to a minor. Although respondent asserts that she had a medical marijuana card and only used marijuana for medicinal purposes, there is no evidence in the record that supports this argument. Respondent testified that she did not have a medical marijuana card. She said that she had one in the past, but it had expired and she did not know when it expired. Respondent never articulated a medicinal purpose for her marijuana use.

The caseworker testified that during respondent's prior Oakland County case, the main emphasis became respondent's mental health, and he relaxed his requirements for other services so that respondent could focus on counseling. The caseworker in this case told respondent that if she participated in substance abuse counseling and the counselor concluded that she did not have a substance abuse issue, he would mark that referral as completed and she would not have to drug test or attend substance abuse counseling. Respondent's parental rights were not terminated because of her marijuana use, but because she failed to address any of the issues that brought her child into care or led to the termination of her parental rights to her other children. Respondent also refused to participate in substance abuse treatment or drug screens, which could have ruled out any concerns that her marijuana use was creating "an unreasonable danger to the minor that can be clearly articulated and substantiated." MCL 333.27955(3).

Respondent also argues that too much was made of her lack of a bond with NF considering the circumstances. However, her lack of a bond with NF was just another example of respondent's failure to put her child's needs before her own. Respondent was only afforded a two-hour visit with NF once a week. Yet respondent asked to end visits early because, in her own words, NF "was crabby, she didn't feel good, she was congested, she wanted to go." Respondent also missed a whole month of visits because she was serving a jail sentence for assault and battery. Considering all of the evidence, the trial court did not clearly err when it found that statutory grounds for termination of respondent's parental rights were established under MCL 712A.19b(c)(*i*), (i), and (j).

Respondent also argues that the trial court erred by finding that termination of her parental rights was in NF's best interests. We again disagree.

The trial court's determination regarding a child's best interests is also reviewed for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). Once a statutory ground for termination has been established by clear and convincing evidence, the trial court must terminate a respondent's parental rights to a child if a preponderance of the evidence on the whole record establishes that termination of parental rights is in the child's best interests. MCL 712A.19b(5); *In re White*, 303 Mich App at 713.

> To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency,

stability, and finality, and the advantages of a foster home over the parent's home." The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (footnotes omitted).]

There were a variety of factors that supported the trial court's finding that termination of respondent's parental rights was in NF's best interests. Respondent failed to meaningfully engage in services. Her participation and compliance with the parent-agency agreement consisted of participation in several psychological, psychiatric, and domestic violence assessments, but she failed to follow through with any of the recommendations that resulted from the assessments.

Respondent had a long history of domestic violence with former partners that involved police visits to her home. While respondent argued that she had not been involved with law enforcement for approximately eight months to a year, she was still dealing with the consequences during this case. Respondent missed a whole month of visitation with NF while she was incarcerated in August 2021, for a misdemeanor assault and battery conviction.

While NF enjoyed her visits with respondent, NF needed an accountable and reliable parent. NF looked to her foster parent for her needs and comfort during her visits with respondent. The foster parent expressed interest in adopting NF. When considering a child's best interests, the trial court may consider the child's need for permanency, stability, and finality, the advantages of a foster home over the parent's home, and the possibility of adoption. *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). According to the caseworker and the foster parent, NF is a happy, talkative child, and her placement with her foster parent will provide her with an opportunity to continue to thrive, grow, and meet her milestones. The trial court did not clearly err by finding that termination of respondent's parental rights was in the child's best interests.

Affirmed.

/s/ Kathleen Jansen
/s/ Colleen A. O'Brien
/s/ Noah P. Hood