In re OLIVE/METTS MINORS

Docket No. 306279. Submitted May 4, 2012, at Detroit. Decided June 5, 2012, at 9:10 a.m. Leave to appeal denied, 492 Mich 859.

The Department of Human Services (DHS) first petitioned the Wayne Circuit Court in 2007 for temporary custody of W. Metts's children at the time, AM1 and RO, in light of evidence of improper supervision and environmental neglect. The children were placed in foster care, and Metts was ordered to participate in services, including anger-management and parenting classes. Metts had an additional child, AM2, in 2009. The court subsequently terminated its jurisdiction in October 2009. Metts had two additional children, twins, DM1 and DM2, in 2010. The DHS filed a second petition for temporary custody in March 2011 following allegations of physical abuse by Metts and her mother. Metts pleaded no contest to the allegations, admitting that there had been physical child abuse on several occasions. The court, Jerome C. Cavanagh, J., ordered termination of Metts's parental rights to all five children, concluding that several statutory grounds for termination had been proved by clear and convincing evidence and that termination of her rights was in the children's best interests. Metts appealed.

The Court of Appeals *held*:

1. A court may terminate a respondent's parental rights if one or more of the statutory grounds for termination are established by clear and convincing evidence. The trial court did not clearly err by finding that grounds under MCL 712A.19b(3)(j) (reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent) were established by clear and convincing legally admissible evidence. Metts had struggled with anger management for years and was still unable to control her anger despite her participation in anger-management classes, as demonstrated by her arrest for disturbing the peace in August 2011 following an altercation with a teacher and the police. The evidence showed that the older children were mimicking Metts's behavior. Therefore, the court properly found that the children were reasonably likely to be harmed if returned to Metts's home.

2. Once a statutory ground for termination has been proved, the trial court must find that termination is in the child's best interests before it can terminate parental rights. In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court has a duty to decide the best interests of each child individually. Although in most cases it will be in the best interests of each child to keep brothers and sisters together, if keeping the children together is contrary to the best interests of an individual child, the best interests of that child will control. A trial court's failure to explicitly address whether termination is appropriate in light of the child's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal. In this case, the evidence showed that Metts loved her children and that the three older children loved her, but the evidence also showed that she struggled to cope with five children, was unable to control her temper to the detriment of the children, lacked a source of income, had lost her home, and was in jail. Metts had failed to derive any lasting benefit from services previously provided, and there were no additional services that could be provided. The evidence supported the trial court's determination that termination was in the best interests of the three older children. However, in determining the best interests of the children, the trial court did not separately address the circumstances of the two younger children, who were then in placement with relatives. Because the trial court was required to consider the best interests of each child individually and was required to explicitly address each child's placement with relatives at the time of the termination hearing if applicable, the trial court clearly erred by failing to do so, and remand for that purpose was necessary.

Affirmed with respect to RO, AM1, and AM2; affirmed in part with respect to DM1 and DM2, best-interest analysis with respect to DM1 and DM2 vacated, case remanded for further proceedings.

PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — BEST-INTEREST ANALYSIS — CONSIDERATIONS.

Once a statutory ground for termination has been proved, the trial court must find that termination is in the child's best interests before it can terminate parental rights; in deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advan-

tages of a foster home over the parent's home; the trial court has a duty to decide the best interests of each child individually; although in most cases it will be in the best interests of each child to keep brothers and sisters together, if keeping the children together is contrary to the best interests of an individual child, the best interests of that child will control; a trial court's failure to explicitly address whether termination is appropriate in light of the child's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal (MCL 712A.19b[5]; MCR 3.977[E][4]).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Richard A. Bandstra*, Chief Legal Counsel, and *Daniel P. Gunderson*, Assistant Attorney General, for the Department of Human Services.

*Brandi N. Taylor* for W. Metts.

*Trish Oleksa Haas* for the minor children.

Before: K. F. KELLY, P.J., and WILDER and BOONSTRA, JJ.

PER CURIAM. Respondent, W. Metts, appeals as of right a circuit court order terminating her parental rights to her minor children pursuant to MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (c)(*i*), (c)(*ii*), (g), (j), and (k)(*iii*). We affirm the trial court's order with respect to the minors RO, AM1, and AM2. With respect to the minor twins, DM1 and DM2, we affirm the portion of the circuit court's order determining that at least one statutory ground supported termination, but vacate the court's best-interest analysis and remand for further consideration of that issue.

### I. BASIC FACTS

Respondent is the mother AM1, RO, AM2, and the twins. The twins are of different paternity than the

other children. The trial court first acquired jurisdiction over the two eldest children in 2007, following a Department of Human Services (DHS) petition for temporary custody alleging that RO had been "found poorly cared for, diapers not changed," and that "the mother threatened to whoop the baby." The petition further alleged that respondent was homeless, the whereabouts of respondent's only other child at the time, a girl, AM1, were unknown, and no suitable relatives were available for placement. At the preliminary hearing, respondent "made admissions . . . sufficient for the court to take temporary jurisdiction of the children . . . based on evidence of improper supervision and environmental neglect." The court placed the children in foster care and directed respondent "to begin anger management and counseling and have a psychological eval[uation]" pending the dispositional hearing.

The trial court entered the initial dispositional order in January 2008. The children were continued in foster care, and respondent was directed to participate in services, including parenting classes, individual counseling, anger management, and family counseling if recommended; she was also directed to obtain suitable housing and a legal source of income. Respondent was granted "unsupervised weekend and overnight visits with goal of reunification with mom within six weeks[.]"

Respondent made progress toward being reunited with her children. She secured suitable housing and a job, and began attending parenting classes, anger-management classes, and individual therapy. However, individual parenting time was terminated in June 2008 after respondent failed to seek medical attention for the children and left the children with a person who was not authorized to baby-sit them. Respondent was also arrested and lost her job and home in May 2008, and

began moving between various housing situations, including a shelter. Respondent developed a pattern of verbal disputes followed by evictions from temporary housing.

Respondent eventually secured somewhat more stable housing and cash and food assistance. She also gave birth to her third child, a boy, AM2, in 2009. The court authorized the DHS to return the two eldest children, AM1 and RO, to respondent with in-home services as long as her housing situation was appropriate and "mother's drug screens are negative." Respondent continued to work well with DHS, and the court terminated its jurisdiction in October 2009. The twins were born in January 2010 and remained in respondent's custody.

The DHS filed another petition for temporary custody in March 2011 following allegations of physical child abuse by respondent and her mother. Respondent admitted to pushing her eldest child, AM1, and scratching her face, and admitted that her mother, Kim Parks, who had a criminal history of felony assault convictions, had been living with her and the children for about three months. Respondent admitted that "she had observed Kim Parks being physically aggressive towards the children" and that "she had noticed changes in her children's behaviors since Kim Parks came to reside in their home."

Respondent pleaded no contest to the allegations against her and admitted physical child abuse occurring on several occasions. She also admitted that she had been previously diagnosed with "psychiatric issues" and was not currently taking her prescribed medication. Respondent was evaluated by a counselor from the court's Clinic for Child Study and was given a poor prognosis concerning her ability to provide all five of her children a safe and

stable environment. At the dispositional hearing, the foster-care worker testified that respondent had been preoccupied or overwhelmed during supervised visits, although the children had a warm relationship with her. Multiple witnesses also testified about respondent's continuing problem with anger management, including several incidents of angry outbursts and at least one incident in which DHS personnel had to call the police to remove respondent from her anger-management class. At the time of the hearing, respondent was incarcerated for disturbing the peace as a result of that incident. Testimony was also taken from multiple witnesses who indicated that the children had begun to internalize and model her aggressive behavior.

Respondent indicated her willingness to continue to attend therapy and anger-management classes and take psychiatric medication. The trial court found that several statutory grounds for termination of parental rights had been demonstrated by clear and convincing evidence and that termination of respondent's parental rights was in the children's best interests.

## II. STANDARD OF REVIEW

A court may terminate a respondent's parental rights if one or more of the statutory grounds for termination listed in MCL 712A.19b(3) have been proven by clear and convincing evidence. Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights. MCL 712A.19b(5); MCR 3.977(E)(4). "We review for clear error both the court's decision that a ground for termination has been proven by clear and convincing evidence and, where appropriate, the court's decision regarding the child's best interest" under MCL 712A.19b(5). *In re Trejo Minors,*

462 Mich 341, 356-357; 612 NW2d 407 (2000); see also MCR 3.977(K). A trial court's decision is clearly erroneous "[i]f although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989) (citations and quotation marks omitted; alteration in original).

### III. STATUTORY GROUNDS FOR TERMINATION

We conclude that the trial court did not clearly err by finding that grounds for termination under MCL 712A.19b(3)(j) were established by clear and convincing legally admissible evidence. See *In re Utrera*, 281 Mich App 1, 16-17; 761 NW2d 253 (2008); MCR 3.977(E)(3) and (K). The evidence showed that respondent had been struggling with her anger-management problem for years. She received treatment for that problem when the two eldest children were previously court wards, and again in 2010 and early 2011. Nevertheless, she was unable to control her anger, even after she resumed her anger-management classes in May 2011. She flew into a rage during a June 2011 family visit and was arrested for disturbing the peace in August 2011 after an altercation with a teacher and the police. The evidence showed that the older children were mimicking respondent's behavior. Therefore, the trial court could properly find that the children were reasonably likely to be harmed if returned to respondent's home. Only one statutory ground for termination need be established. *In re CR*, 250 Mich App 185, 207; 646 NW2d 506 (2002).

### IV. BEST-INTEREST DETERMINATION

In deciding whether termination is in the child's best interests, the court may consider the child's bond to the

parent, see *In re BZ*, 264 Mich App 286, 301; 690 NW2d 505 (2004), the parent's parenting ability, see *In re Jones*, 286 Mich App 126, 129-130; 777 NW2d 728 (2009), the child's need for permanency, stability, and finality, see *In re VanDalen*, 293 Mich App 120, 141-142; 809 NW2d 412 (2011), and the advantages of a foster home over the parent's home, *In re Foster*, 285 Mich App 630, 634-635; 776 NW2d 415 (2009). "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5); see also MCR 3.977(E)(4).

We hold that the trial court has a duty to decide the best interests of each child individually. See *Foskett v Foskett*, 247 Mich App 1, 11; 634 NW2d 363 (2001); see also *In re HRC*, 286 Mich App 444, 457; 781 NW2d 105 (2009). Although "in most cases it will be in the best interests of each child to keep brothers and sisters together . . . , if keeping the children together is contrary to the best interests of an individual child, the best interests of that child will control." *Wiechmann v Wiechmann*, 212 Mich App 436, 440; 538 NW2d 57 (1995); see also *Foskett*, 247 Mich App at 11. While *Foskett* and *Wiechmann* were child custody disputes in which the children's best interests were analyzed under the framework of the Child Custody Act, MCL 722.21 *et seq.*, the same principle—that each child be treated as an individual—applies with equal force in termination-of-parental-rights cases under the juvenile code, MCL 712A.1 *et seq.* It is, therefore, incumbent on the trial court to view each child individually when determining whether termination of parental rights is in that child's best interests.

The evidence showed that respondent loved her children and that the three older children loved her. The evidence also showed that respondent struggled to cope with five children, was unable to control her temper to the detriment of the children, lacked a source of income, had lost her home, and was in jail. Respondent failed to derive any lasting benefit from services previously provided and there were no additional services that could be provided. We conclude that the evidence supported the trial court's determination that termination was in the best interests of RO, AM1, and AM2.

However, because "a child's placement with relatives weighs against termination under MCL 712A.19a(6)(a)," the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests. *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). Although the trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests, *In re IEM*, 233 Mich App 438, 453; 592 NW2d 751 (1999), overruled on other grounds by *In re Morris*, 491 Mich 81; 815 NW2d 62 (2012); *In re McIntyre*, 192 Mich App 47, 52-53; 480 NW2d 293 (1991), the fact that the children are in the care of a relative at the time of the termination hearing is an "explicit factor to consider in determining whether termination was in the children's best interests," *Mason*, 486 Mich at 164. A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal. *Mason*, 486 Mich at 163-165; *In re Mays*, 490 Mich 993, 994 (2012).

The trial court did not expressly address the fact that the two youngest children were residing with a paternal

relative. Because the trial court was required to consider the best interests of each child individually and was required to explicitly address each child's placement with relatives at the time of the termination hearing if applicable, *Mason*, 486 Mich at 164; *Mays*, 490 Mich at 994, we conclude that the trial court clearly erred by failing to do so. Therefore, we vacate the trial court's best-interest analysis with respect to the twins, and remand this case to the trial court for further proceedings not inconsistent with this opinion.

Affirmed with respect to the minor children RO, AM1, and AM2. Affirmed in part, vacated in part, and remanded for further proceedings with respect to the minor children DM1 and DM2. We do not retain jurisdiction.

K. F. KELLY, P.J., and WILDER and BOONSTRA, JJ., concurred.