*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. BOGGAN, Minor.

UNPUBLISHED
June 23, 2022

No.  359605
Ingham Circuit Court
Family Division
LC No.  20-000411-NA

Before:  GLEICHER, C.J., and SAWYER and GARRETT, JJ.

PER CURIAM.

Respondent mother appeals from an order of the circuit court terminating her parental rights to the minor child.  We affirm.

The termination of respondent's parental rights following the October 25, 2021 bench trial was based upon the testimony of two foster care workers, Mackenzie Cooper and Lakeshia Fowler. Cooper testified that the original complaint to Child Protective Services was based upon improper supervision and mental health concerns.  Cooper reviewed respondent's mental health issues, including an evaluation at Sparrow Hospital and medication changes.  Following the discharge from Sparrow, respondent had a shelter placement in Grand Rapids, where she was unable to provide proper care and custody of the minor child.  Cooper further testified that, although respondent consistently reported to be employed (with "quite a bit of employment changes"), she never provided verification of her employment.  Similarly, respondent reported multiple different living situations to Cooper during Cooper's time serving as the case worker.

Cooper also testified regarding respondent's compliance with drug testing.  Cooper testified that, during her time on the case, respondent was only 41% compliant with drug testing. According to Cooper, during Cooper's involvement with this case, respondent tested positive on one occasion for amphetamines, methamphetamines, and TCH (sic—THC?).  And also tested positive for THC on numerous other occasions.

According to Cooper, respondent was referred to a psychological evaluation in 2020 that she failed to attend, but did attend a second referral.  That evaluation resulted in a number of recommendations, including that respondent establish housing, maintain consistent income, and have a responsible lifestyle.  It was recommended that this be maintained for six months prior to

reunification. A pharmacological consult for mood modification was also recommended, as well as intensive therapy. Cooper testified that respondent was referred for counseling and did receive both individual and group therapy as part of a residential program. Those services ended when respondent turned 18 as she no longer wished to reside in the program. Cooper stated that respondent then received a referral to Community Mental Health, but she did not make an appointment to go to therapy. Cooper also testified that respondent did, in early 2021, participate in counseling in the Jackson area, but that was discontinued due to "numerous no call or no shows" by respondent to scheduled appointments. Cooper provided information on Detroit Behavior Health at that point as respondent was now residing in Detroit, though Cooper was unsure as to what extent respondent followed up with that service beyond an initial visit to the office.

As for parenting time, respondent initially participated in virtual visits due to the pandemic. Eventually, there were in-person visitation at the DHHS office scheduled for twice a week, of which respondent attended 4 of 40 scheduled visits. The schedule was changed to once a week at respondent's request and she attended 13 of the 29 scheduled visits. Cooper reported that respondent's behavior during these visits was appropriate.

Cooper offered her opinion that respondent would be unable to provide proper care and custody of the minor child within a reasonable time. She also opined that there was a reasonable likelihood that the child would be harmed if placed with respondent. Further, it was her opinion that there was "somewhat" love, affection, or other emotional ties between respondent and the child, that respondent lacked the capacity to give love, affection, guidance, or education to the child or to provide food, clothing, or medical care.

Turning to the testimony of Fowler, she was the current caseworker at the time of the trial. Like with Cooper, respondent had reported to Fowler that she was employed, but failed to provide verification. At the time of trial, respondent was living in transitional housing that was not appropriate for the minor child. And respondent was not compliant with random drug screening. Respondent would submit to screening when she had parenting time, but consistently tested positive for THC when she did.

As of the trial, respondent had just started a counseling program. Fowler reported that respondent had attended 8 of the last 11 parenting time opportunities, which had gone well. Like Cooper, Fowler opined that there was not a reasonable expectation that respondent would be able to provide proper care and custody of the child within a reasonable period of time. Fowler further testified that respondent had not been compliant with the services offered to her since the filing of the petition. And, more specifically, when asked "are there any services on the horizon that if completed you believe would make a difference in this case and would allow the mother to be able to reunify with her child" the answer was "no." Fowler was then asked whether there were "any steps that the mother could take in the next few days, weeks that would allow her to reunify with her child, in your opinion?" The answer was "I do not believe so." And when asked if she believed that respondent "has been participating in services throughout this last reporting period, and the case in general" the answer was again that she was not. Finally, Fowler said she did not believe that respondent had benefited from any of the services provided.

Respondent first argues that the trial court erred in finding that reasonable efforts were made to reunify respondent with the minor child. We disagree. There is an affirmative duty, before seeking termination of parental rights, to make reasonable efforts to reunify a family. MCL 712A.18f(3); MCL 712A.19a(2); see also *In re Hicks*, 500 Mich 79, 85; 893 NW2d 637 (2017). We initially note that respondent's argument on this issue consists largely of a review of respondent's history and mental health issues. Respondent does not significantly identify what additional efforts should have been made to seek reunification beyond a general assertion that a referral had not been made for services based upon the psychological evaluation. But respondent's support for that claim is a statement by the guardian ad litem at a permanency planning hearing held four months before the termination hearing to the effect that respondent had recently taken part in a psychological evaluation and that the recommendations arising from that evaluation had not yet been put in place. Furthermore, the testimony of both Cooper and Fowler was that respondent did not take advantage of the services that had been offered. Indeed, not only did Fowler testify that respondent failed to take advantage of the services that had been offered, Fowler did not believe that there were any services that could be offered that would make a difference in this case. In light of this testimony, and respondent's failure to identify any additional services that should have been provided, we are not persuaded that there are any additional efforts that could have or should have been made to reunify respondent with the minor child.

Next, respondent argues that the trial erred when it found that the statutory grounds for termination had been established by clear and convincing evidence. We disagree. To terminate parental rights, the trial court must find at least one statutory ground exists by clear and convincing evidence. *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). If the trial court correctly found that a statutory ground for termination existed, it does not matter if the trial court also erroneously found that other grounds also existed. *Id*. Once a statutory ground is found to exist, if the court finds that it is in the child's best interests to do so, the court must terminate the parental rights. *Id*. at 32-33. We review the trial court's findings for clear error. *Id*. at 33.

In this case, the trial court found that three statutory grounds existed, namely MCL 712A.19b(3)(c)(i), (g), and (j). The testimony of Cooper and Fowler, with no contradictory evidence being presented at trial, established all three grounds.

MCL 712A.19b(3)(c)(i) provides as follows:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (i) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Respondent argues that she was making gains towards rectifying the issues that led to adjudication. We disagree. First, with respect to both housing and unemployment, although respondent reported to Cooper and Fowler both employment and housing, she did not provide verification. As to mental health issues, the record is spotty at best with respect to her addressing those issues. Second, even accepting that she has made some progress, that does not lead to the conclusion that the problems have been rectified or that they will be within a reasonable time. In its opinion, the trial court concluded that respondent "did not complete any programming ultimately in this case, and did nothing that the Court required her to do, at least not to completion. She did little bits and pieces of stuff along the way, but nothing that was ever completely done and done correctly." We are not convinced that the trial court clearly erred in this conclusion.

Next, MCL 712A.19b(3)(g) allows for termination if the parent "fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time." Both Cooper and Fowler testified that, in their opinions, there was no reasonable likelihood that respondent would be able to provide proper care and custody for the child within a reasonable time. This conclusion is supported by respondent's inconsistency in visitation and compliance with drug testing, including that numerous drug screens were positive when she did submit to drug testing.

Finally, MCL 712A.19b(3)(j) provides for termination if there "is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." This conclusion is also supported by the uncontradicted testimony of Cooper and Fowler regarding the lack of progress by respondent throughout this case and her inconsistency in taking advantage of the services provided. Of particular concern is respondent's continued substance abuse and the potential harm that it represents for the child.

In sum, we are not persuaded that the trial court clearly erred in finding that the statutory grounds for termination exists. This leads to the final issue, whether it was in the child's best interests to terminate parental rights. Among the factors that the court may consider are the bond between parent and child, the parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012).

The trial court's opinion on this issue focused primarily on the need for permanency and stability in the child's life. The trial court concluded that, even 17 months into the wardship, respondent was unable to provide this. The trial court emphasized the need to achieve permanency as quickly as possible, and the evidence did not support the conclusion that respondent would be able to do that any time soon. The trial court also noted that the psychological evaluation by Dr. Haugen showed that respondent "had PTSD, mixed personality with narcissistic anti-social patterns, some child neglect and abuse history, that she needed at least six months of committed responsible lifestyle prior to her being reunified with her child in the sense that would be best and that would be safer." The trial court rejected the idea of continuing the case for another six months when the evaluation suggested that the prognosis was poor.

It is true that there appears to be a good bond between respondent and the child. And there was testimony that the visitations with the child generally went well. But in light the psychological

-4-

evaluation, the poor prognosis in this case, and the need for permanency and stability, we are not persuaded that the trial court clearly erred in finding that termination was in the best interests of the child.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ Kristina Robinson Garrett