*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BUTLER, Minors.

UNPUBLISHED
November 17, 2022

No. 360271
Calhoun Circuit Court
Family Division
LC No. 2018-002434-NA

Before: M. J. KELLY, P.J., and SHAPIRO and PATEL, JJ.

PER CURIAM.

Respondent appeals by right the trial court order terminating her parental rights to her children, RB and SB, under MCL 712A.19b(3)(b)(*i*) and (c)(*i*), and (j). Because the trial court did not err by terminating respondent's parental rights, we affirm.

## I. BASIC FACTS

On August 29, 2018, petitioner, the Department of Health and Human Services, filed a petition seeking removal of RB, SB, and KM from respondent's care and seeking termination of her parental rights to each of the children. The petition alleged that SB had been born with morphine and oxycodone in his system because of prenatal exposure, that he was diagnosed with neonatal abstinence syndrome, and that he was transported to a neonatal intensive care unit (NICU) and treated for opioid withdrawals. Petitioner also alleged that respondent tested positive for opiates at the time of SB's birth, that she had admitted to taking unprescribed opiates during her pregnancy, and that she had previously struggled with drug addiction.

Following a preliminary hearing, RB and SB were placed with their father[1] and KM was placed with her father.[2] Subsequently, respondent entered a plea of admission to several allegations in the petition, including that she had used unprescribed opiates while pregnant with SB, that she tested positive for opiates when she was admitted to the hospital to deliver SB, that SB had been born positive for opiates, that SB experienced substance-abuse withdrawal symptoms after his birth. At that time, the dispositional goal was changed from termination to reunification, and the court entered an order taking jurisdiction over the children.

Respondent was provided with numerous services aimed at reunifying her with the children, including referrals for psychological evaluations, parenting-time visits, a referral for supportive visitation, individual counseling, substance-abuse counseling, parenting classes, drug screens, assistance with employment, and housing resources. Yet, after approximately 39 months she was, overall, not very compliant with the services offered and had failed to show any visible benefit. She continued to have issues with substance-abuse, including testing positive for amphetamines, methamphetamines, and marijuana, and being convicted of possession of methamphetamines.[3] She also continued to inconsistently attend parenting time, had yet to complete the offered parenting-time classes, had only recently completed her (fourth) referral for a psychological evaluation, had not consistently attended either individual or substance-abuse counseling, and remained unemployed.

Respondent's psychological evaluation was not favorable. Dr. Randall Haugen, who was admitted as an expert in psychology, performed the evaluation in July 2021. Respondent reported to him that she had a court-related history of drug use, including methamphetamine, that she had used substances with the children's father, that she had previously participated in inpatient treatment and had been in sober-living houses, that she was still dealing with the legal consequences of her substance-abuse, and that she was still struggling with substance use. Dr. Haugen diagnosed respondent with stimulant disorder, moderate to severe personality disorder with mixed features, unspecified anxiety, and cannabis-use disorder. He described respondent's manner as defensive and combative, and he stated that individuals with her "profile" tended to be

---

[1] RB and SB were later removed from their father's care due to allegations of substance abuse and domestic-violence involving him throwing a brick at the children's paternal grandfather. The children's father left the home after the incident with their paternal grandfather, but he later returned and continued to be assaultive. When law enforcement arrived, the children's father threatened to attack the police with a weapon so that they would shoot him. At the time, he was holding the children in his arms. Following a bench trial, the court found that there were statutory grounds to exercise jurisdiction over the children under MCL 712A.2(b). His parental rights to the children were terminated following a subsequent termination hearing, and he has not appealed that decision.

[2] During the pendency of the child protective proceedings, KM's father obtained a court order granting him sole custody of KM. As a result of that custody order, the court terminated its jurisdiction over KM.

[3] Her caseworker explained that, although marijuana use is not illegal in Michigan, respondent's cannabis use was a problem because she had been diagnosed with cannabis-use disorder.

impulsive and act in regrettable ways. Dr. Haugen opined that respondent had difficulty managing and controlling her emotions, which led to violations of social rules, expectations, and boundaries, and that her issues remained chronic or continued despite significant treatment interventions and negative consequences arising from her use. Overall, Dr. Haugen explained that respondent's overall prognosis was poor because she had long-term substance abuse problems and because part of her problem was characteriologically based, and was not the product of a mental illness. He opined that she was "quite vulnerable to relapse, once external supervision is decreased." Dr. Haugen recommended that respondent maintain a consistent and responsible lifestyle and that she participate in a program like AA or NA to aid her stability. He elaborated that to do so she would have to maintain all treatment, obtain housing, income, stability, an external support system, and develop some insight and awareness of her issues. He opined that, if she were 100% committed to following the recommendations, it would take at least 9 months before reunification would be possible, but if there was less than 100% compliance it would be longer before reunification would be possible.

Dr. Haugen also conducted a psychological evaluation of RB. He stated that RB described respondent as detached and not often there and that she had fading memories of respondent fighting with RB's father. RB suffered from a lot of uncertainty because the "adult world" was not able to meet her needs, tended to keep others at a distance, had intrusive memories, had a sexual preoccupation compared to other children her age, was intelligent but distracted and hyperactive, and met the criteria for post-traumatic stress disorder (PTSD). Dr. Haugen opined that she really needed permanence and direction so that she could form attachments, and he explained that she is vulnerable to developing future emotional and behavior difficulties. He added that the significant, chronic trauma that she had endured was preventing her from developing close and intimate relationships. Given her age (7 years old at the time), he believed that stability was highly important to her. He explained that RB's progress in therapy would "improve" once she has a sense of permanency.

With respect to SB, Dr. Haugen testified that he expected that, although SB was only three years old, SB would have the same types of issues as RB when he got older. He stated that as SB enters the 4-5 year age range, it was particularly important for him to achieve permanence and stability so that he would be able to sort relationships into public and private and so that he would know who to refer to as his parents.

Dr. Haugen explained that RB identified her foster parents as her parents. The foster parents were willing to adopt and the caseworker testified that the children's needs were being met by the foster parents. She clarified that RB had 50% of her life in the care of someone other than respondent and that SB had never been in respondent's care. She also testified that the children "absolutely" had an "obvious" bond with respondent; she described them as happy and excited to see respondent when respondent would go to the parenting time visits. She believed that the termination of respondent's parental rights would be difficult for the children. To alleviate that difficulty, while also providing the children with the permanence that Dr. Haugen opined they needed, she suggested that the children continue to have some supervised contact with respondent after they were adopted. On questioning from the court, the caseworker stated that a guardianship was not appropriate because adoption would provide "a greater level of permanence." And, again, the children needed permanence and stability. She also explained that the recommendation for

continued contact was based only on her own opinion, and that Dr. Haugen had not—and was not asked to—provide a professional opinion on whether such continued contact would be detrimental.

Following the termination hearing, the trial court found that termination of respondent's parental rights was warranted under MCL 712A.19b(30(b)(*i*) and (c)(*i*),[4] and that termination of respondent's parental rights was in the children's best interests. This appeal follows.

## II. BEST INTERESTS

### A. STANDARD OF REVIEW

Respondent argues that the trial court's best-interests decision was clearly erroneous.[5] A trial court's best-interests determination is reviewed for clear error. *In re A Atchley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 358502); slip op at 6-7. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021) (quotation marks and citation omitted).

### B. ANALYSIS

Under MCL 712A.19b(5), "[i]f the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *In re Moss Minors*, 301 Mich App 76, 90; 836 NW2d 182 (2013). "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). At this stage of the proceedings, the focus is on the child, not the parent. *In re A Atchley*, ___ Mich App at ___; slip op at 7.

---

[4] Respondent has not challenged the trial court's finding that there was clear and convincing evidence of statutory grounds to terminate her parental rights. Accordingly, we do not address that aspect of the court's order terminating respondent's parental rights.

[5] Respondent's appellate lawyer quotes the former version of MCL 712A.19b(5), which required the trial court to find that termination of the respondent's parental rights was "clearly not in the child's best interests." In 2008, however, the legislature amended that part of MCL 712A.19b(5) to require the court to instead find that "termination of parental rights is in the child's best interests" before the court may order termination of parental rights. See 2008 PA 199. Thus, under the current version of MCL 712A.19b(5), the trial court must make an affirmative finding that termination is in the child's best interests as opposed to a negative finding that termination is *not* in the child's best interests. Although it is concerning that respondent's appellate lawyer would cite to a former version of the statute, the trial court applied the correct version of the statute and we are able to review that decision for clear error.

Respondent argues that the trial court did not consider any of the above factors, nor did it take any testimony relating to the children's best interests. The record, however, refutes that assertion. First, testimony related to the children's best-interests was presented. Dr. Haugen testified and the caseworkers testified at length regarding the children's need for permanence, stability, and finality. Additionally, there was testimony related to the children's bond with respondent and to the advantages of the children's pre-adoptive foster home over respondent's home.

Second, the trial court made express findings related to several of the best-interest factors. The court found that it was "highly important" for RB to have stability and finality. The court found that her memories of her biological parents were fading, but that she remembered arguing, fighting, and respondent's absence. He noted testimony that RB's uncertainty regarding the future was "absolutely limiting her progress" and that she needed permanence quickly so that she could overcome her PTSD and her struggles with the trauma she endured because of her parents' actions. With regard to SB, the court found that he also needed permanence and stability, noting that he was showing confusion as to who his parents were. The court also considered the advantages of the foster home over respondent's home. The court specifically found that there was a bond between the children and their foster parents. Next, contrary to respondent's claim on appeal, the court also recognized that there was a bond between the children and respondent. Despite that bond, the court determined that "these children can't wait any longer for their mother to get her situation straight."

Respondent argues that the court failed to consider that, because she had completed a parenting class, her parenting ability had improved. Yet, the caseworker testified that she had not successfully completed the class because she had not turned in required homework. Respondent also suggests that a comparison between her home and the foster home is unfair because a foster home will always have advantages. The focus, however, is on the *child's* best interests, not the level of fairness to the respondent parent. In considering the child's best interests, advantages over the foster home can be considered. *In re Olive/Metts*, 297 Mich App at 41-42. In this case, after over 1,000 days in care, respondent was no closer to reunification with her children. Primarily, she continued to struggle to maintain sobriety. The children demonstrated a need for permanence and stability that respondent was not in a position to provide them with. Further, in light of her psychological evaluation and subsequent failure to fully comply with the recommendations made by Dr. Haugen, it appears that any reunification would be delayed by a minimum of 9 months. In contrast, the foster parents were willing to adopt the children and provide them with immediate permanence. The children's needs were being met in foster care, including RB's need for therapy to address her trauma-related mental health issues and detachment problems. The trial court did not clearly err by finding that the advantages of the foster home, which was readily available to provide the children with needed permanence, weighed in favor of finding that termination of respondent's parental rights was in the children's best interests.

Finally, respondent contends that the court made no efforts to place the children with relatives. The children, however, were initially placed with their biological father. They were only placed in unrelated foster care after their father's substance abuse and domestic violence led to him assaulting the children's paternal grandfather and attempting to get the police to shoot him while he was holding the children. Respondent has not identified which other relatives were willing to accept placement of the children and whom would constitute appropriate placements.

On this record, the trial court heard evidence related to the children's best-interests and made findings relevant to multiple best-interests factors. Further, the court's factual findings were not clearly erroneous. Termination, therefore, was mandated under MCL 712A.19b(5).

Affirmed.

/s/ Michael J. Kelly
/s/ Douglas B. Shapiro
/s/ Sima G. Patel