*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* T. Davis, Minor.

UNPUBLISHED
October 15, 2024
1:51 PM

No. 370461
Berrien Circuit Court
Family Division
LC No. 2021-000044-NA

Before: SWARTZLE, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

The trial court terminated respondent-father's parental rights to TD. Respondent-father argues that termination was not in TD's best interests when she could have been placed in a long-term guardianship with a relative. We affirm.

TD is the biological child of respondent-father and mother. Mother has another child, AN, with another man, but neither mother nor AN's father are parties to this appeal.

In July 2021, respondent-father was incarcerated, and mother was living with TD and AN in a domestic-violence shelter. Children's Protective Services became involved after receiving a report that mother was to be evicted from the shelter because of her possession of drug paraphernalia. The children were ultimately removed from mother in August 2021.

Respondent-father was incarcerated for a felony-domestic-violence conviction until June 2022. During that time, he attended court hearings remotely and completed domestic-violence and drug-treatment classes in the prison. When he was released from prison, respondent-father and mother got married and attended marriage-counseling sessions. Respondent-father continued to take domestic-violence classes. The children were returned to respondent-father's and mother's home in May 2023.

During a July 2023 permanency-planning hearing, Christine Smith, a foster-care specialist, testified that mother was staying in a shelter with the children after respondent-father stole money from her, preventing her from paying rent. Respondent-father had told mother that when he finished probation in June 2023, "he was done with being at home." Respondent-father had also

pulled "plugs off of [mother's] car and threw them at her." Smith was concerned about respondent-father's history with domestic violence and requested a no-contact order between mother and respondent-father. The trial court ordered that mother have no further contact with respondent-father and that both children remain with mother.

In September 2023, respondent-father hit mother with his vehicle during an argument in front of the children, injuring mother's ankle. Petitioner requested termination of respondent-father's parental rights, and the children were removed from the home after a hearing.

During an October 2023 hearing, respondent-father testified that he did not hit mother. Instead, respondent-father claimed that he and mother argued in the car, so he pulled over. The children and mother got out of the car, and mother kicked his car, so he got back out and went "to the front of [his] truck to beat her ass." She was, however, "already on the ground." Respondent-father then drove away. Respondent-father asserted that mother's injury was old. The trial court ordered that petitioner initiate termination proceedings.

A termination trial occurred over three separate days. Smith testified that respondent-father had been incarcerated for domestic violence when the case began, but he did not show benefit from services after the children were returned. After respondent-father hit mother with the car, he had been charged with second-degree child abuse, assault with intent to do great bodily harm less than murder, and aggravated assault, and he was incarcerated awaiting his criminal trial. Smith testified that termination was in TD's best interests because respondent-father had failed to comply with the case-service plan or benefit from services, and she was concerned about his parenting ability. Smith thought that the children had a strong bond with mother, but she did not know if respondent-father and TD still had a bond. The children were in separate placements with maternal relatives, were being well-cared for, and had the opportunity to see each other. Smith had been to the placements, saw the children interact with their caregivers, and found that their "bond was really, really good with both kids." The relative placements for each child were willing to adopt upon termination.

The trial court found that grounds for termination under MCL 712A.19b(3)(c)(*i*) and (j) had been established because the conditions leading to adjudication had not been resolved, there was no likelihood that the conditions would be rectified within a reasonable time, and there was a reasonable likelihood that TD would be harmed if placed back in respondent-father's care. The trial court found that respondent-father had eight previous convictions for assault or domestic violence, and, after he was released from prison, he committed another act of domestic violence in front of the children. The trial court stated that respondent-father had been "in prison because of his violent past and he has shown that his future is going to be just as violent." The trial court further explained that TD was being well cared for in the relative placement, and the caregiver had expressed a willingness to provide permanency. Accordingly, the trial court found that it was in TD's best interests to terminate respondent-father's parental rights.

Respondent-father now appeals.

Respondent-father argues that the trial court's findings regarding TD's best interests were erroneous because guardianship, not termination, was in TD's best interests, considering respondent-father's bond with TD. "Once a statutory ground for termination has been proven, the

-2-

trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). We review for clear error a trial's determination about a child's best interests. *Id*. Clear error exists when this Court is left with a definite and firm conviction that a mistake has been made. *Id*. at 41.

When determining whether termination is in a child's best interests, the focus is on the child's interests, rather than the parent's interests. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). The trial court may consider factors such as the bond between a child and parent; parenting ability; the child's need for permanency, stability, and finality; and the advantages of a foster home over that of the parent's home. *In re Olive/Metts*, 297 Mich App at 41-42. When a minor child is in a relative placement, the trial court must explicitly consider whether termination is appropriate in light of that relative placement. *Id*. at 43.

Here, the record establishes that TD was doing well in her placement, and she would potentially be adopted, providing her with permanency. There was limited evidence of a bond between TD and respondent-father. The record also shows that respondent-father had a significant history of committing domestic violence, which continued after his release from prison and the return of children to his care. Although respondent-father denied hitting mother with his car, he admitted that his intent in the incident was to physically assault mother.

Respondent-father argues that "[i]f the relatives were willing to adopt, they would be willing to enter into a long term guardianship." In *In re Rippy*, 330 Mich App 350, 359; 948 NW2d 131 (2019), this Court explained that the respondent's claim that the court should have established a guardianship was not persuasive when "no one petitioned the trial court for a guardianship and there [was] no suggestion in the record that the [relative] with whom [the child] was placed would have agreed to that arrangement." Likewise, there is no indication in this record that TD's caregiver had, or would have, agreed to a guardianship, and respondent-father did not petition the court for a guardianship.

Respondent-father relies on MCL 712A.19a(4) to argue that the trial court was required to consider a guardianship during permanency-planning hearings. This subsection lists potential permanency plans for courts to consider, including returning a child to a parent, terminating parental rights, a guardianship, or a relative placement. See MCL 712A.19a(4). The trial court had returned TD to respondent-father's care, but TD was again removed following respondent-father's assault on mother, at which point termination proceedings began. There is no requirement in MCL 712A.19a that a trial court order a guardianship. Instead, MCL 712A.19a(9) permits the trial court to consider a guardianship when the petitioner demonstrates that initiating termination proceedings was *not* in the child's best interests or the trial court does not order the petitioner to initiate termination proceedings. See *In re Rippy*, 330 Mich App at 359-360. Those circumstances are not present here, as petitioner sought termination as being in TD's best interests, and the trial court ordered the initiation of termination proceedings.

Moreover, considering respondent-father's ongoing criminal charges, incarceration, and issues with domestic violence, if the trial court ordered a guardianship for TD, there is no indication when, or if, TD would achieve permanency. The trial court, instead, properly focused on TD's best interests, considered the positive environment of her placement, and explicitly noted that TD

was placed with a relative who was willing to adopt her. Therefore, the trial court did not err by finding that termination was in TD's best interests.

Affirmed.

/s/ Brock A. Swartzle
/s/ James Robert Redford
/s/ Kathleen A. Feeney