*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLICATION
UNPUBLISHED
July 17, 2025
2:24 PM

*In re* C. R. HOLBROOK, Minor.

No. 373851
Branch Circuit Court
Family Division
LC No. 24-006772-NA

Before: CAMERON, P.J., and REDFORD and GARRETT, JJ.

PER CURIAM.

Respondent-mother admitted using drugs during her pregnancy with CRH, the minor child at issue in this case. Drug use was also a factor that led to the termination of respondent's parental rights to three of her other children. She appeals by right the trial court's order terminating her parental rights to CRH pursuant to MCL 712A.19b(3)(i) (parental rights to one or more siblings terminated because of serious and chronic neglect) and (j) (reasonable likelihood of harm if child returned to parent). Respondent argues that the trial court clearly erred when it evaluated CRH's best interests because it failed to consider that CRH's placement with a relative weighed against termination. Because CRH's foster father did not constitute a relative under MCL 712A.13a(1)(j)(*ii*), we affirm.

## I. RELEVANT FACTS

On July 16, 2024, respondent was admitted to the hospital with a Methicillin-resistant Staphylococcus aureus (MRSA) infection.[1] She was pregnant with CRH at that time and had not received any prenatal care. Respondent admitted to hospital staff that she used controlled substances during her pregnancy, including fentanyl, heroin, and methamphetamine. She tested positive for methamphetamine at the hospital. She gave birth to CRH on July 26, 2024.

---

[1] An MRSA infection "is caused by a type of staph bacteria that's become resistant to many of the antibiotics used to treat ordinary staph infections." <https://www.mayoclinic.org/diseases-conditions/mrsa/symptoms-causes/syc-20375336> (accessed July 3, 2025).

Petitioner, the Department of Health and Human Services (DHHS), petitioned to remove CRH from respondent's care and terminate her parental rights. The petition indicated that respondent's parental rights to three of her other children had been terminated. Her oldest child, MA, had been removed from respondent's care and placed with the child's father, who also adopted two of respondent's other children. The trial court authorized the petition and ordered that CRH be removed from respondent's care and placed in foster care with MA's father and CRH's half-siblings. The court also ordered respondent to submit to random drug screens and authorized supervised parenting time at the discretion of the DHHS.

Throughout the lower court proceedings, respondent failed to appear in person for any proceeding despite the trial court directing her to do so. She also failed to submit to 15 out of 16 drug screens, and the one drug screen she took was positive for THC. Respondent claimed that she sought admission to a drug rehabilitation program, but had difficulty finding a program because she had yet to be medically cleared following her MRSA infection. She also claimed that she was receiving mental-health services, but failed to provide evidence corroborating her claim.

Respondent routinely arrived late for parenting time with CRH. She cited transportation problems as the reason why she was absent from court and late to parenting time. She maintained that she was living between two residences, but was unable to provide the court with either address. In addition, she admitted that she had not held a full-time job since 2022 and claimed that her family sometimes assisted her financially.

The trial court found that the statutory grounds for termination under MCL 712A.19b(3)(i) had been met because respondent failed to rectify the chronic problems that had existed since at least 2017 and led to the previous terminations of her parental rights. The court referenced specifically respondent's continued drug use and lack of prenatal care. The court also found that termination was proper under MCL 712A.19b(3)(j). The court reasoned that CRH was reasonably likely to be harmed if left in respondent's care because of respondent's uncertain and unstable living situation, her continuing drug use, and her apparent lack of means to support herself or CRH. Further, the court opined that terminating respondent's parental rights was in CRH's best interests, highlighting CRH's need for stability, safety, and permanence. The court therefore ordered the termination of respondent's parental rights. This appeal followed.

## II. ANALYSIS

Respondent argues that the trial court failed to recognize that CRH's placement with fictive kin weighed against termination of her parental rights. She asserts that reversal is necessary because the court failed to explicitly consider CRH's relative placement. If the trial court finds that the DHHS established one or more grounds for termination of parental rights,[2] the court must order termination of parental rights if it also finds that termination is in the child's best interests.

---

[2] Respondent does not challenge the trial court's determination that the evidence satisfied at least one statutory basis for terminating her parental rights. Nevertheless, having reviewed the record, we conclude that the trial court properly determined that clear and convincing evidence supported the statutory grounds for termination. See *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013).

MCL 712A.19b(5); *In re Beck*, 488 Mich 6, 11; 793 NW2d 562 (2010). We review for clear error a trial court's decision that termination is in a child's best interests. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). A finding is clearly erroneous if, although some evidence supports the finding, we are firmly and definitely convinced that a mistake has been made. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). We review de novo issues of statutory interpretation. *Id*.

In making a best-interest determination, the focus is on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). The trial court should weigh all the available evidence, including the parent's parenting ability, the child's bond to the parent, the advantages of the foster home over the parent's home, and the child's need for stability, permanency, and finality. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). Whether termination of parental rights is in a child's best interests must be established by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013).

In determining a child's best interests, the trial court must consider the child's placement with relatives, which weighs against termination. *In re Mota*, 334 Mich App 300, 321; 964 NW2d 881 (2020). "A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *In re Olive/Metts Minors*, 297 Mich App at 43.

The trial court's only reference to CRH's placement with relatives was its reference to the child's pre-adoptive placement with "fictive kin." The court stated as follows:

> [T]he Court does not see an obstacle, even we—we were to get to that point of a potential pre-adoptive being a fictive kin [sic]. I mean, it's good, the fact that it is pre-adoptive. It's also good that there's other siblings and they're in that residence, so the Court, again, finds that it'd be in the best (unintelligible) to terminate parental rights.

The DHHS contends that the trial court's statement acknowledging CRH's placement with her foster father satisfied the court's obligation to explicitly consider CRH's placement with relatives. However, before we can determine whether the statement was sufficient, we must first decide the threshold question whether CRH's foster father satisfies the statutory definition of "relative."

The Michigan Legislature enacted 2022 PA 200, effective October 7, 2022, to bring certain "fictive kin" within the definition of "relative" in MCL 712A.13a(1)(j). *In re CJM*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367565); slip op at 5. MCL 712A.13a(1)(j) provides, in relevant part:

> (j) "Relative" means an individual who is at least 18 years of age and is either of the following:
>
> (*i*) Related to the child within the fifth degree by blood, marriage, or adoption, including the spouse of an individual related to the child within the fifth degree, even after the marriage has ended by death or divorce, the parent who shares custody of a half-sibling, and the parent of a man whom the court has found

probable cause to believe is the putative father if there is no man with legally established rights to the child.

        (*ii*) Not related to a child within the fifth degree by blood, marriage, or adoption but *who has a strong positive emotional tie or role in the child's life or the child's parent's life if the child is an infant . . . .* [Emphasis added.]

Considering the statutory criteria, CRH's foster father is not her relative under § (1)(j)(*i*) because he is not related to her by blood, he and respondent were never married, and he does not share custody of any of CRH's half-siblings with respondent. Although CRH's foster father has custody of MA, he does not share custody of MA with respondent. Therefore, the question is whether CRH's foster father is a relative under § (1)(j)(*ii*).

In *In re CJM*, ___ Mich App at ___; slip op at 1-2, this Court considered the 2023 termination of a father's parental rights to a child born in 2019. The child had been cared for since his birth by a woman who was not his mother, yet the record showed that the child considered the woman to be his mother at the time of termination. *Id*. at 2, 4. This Court concluded that the woman qualified as the child's relative under § (1)(j)(*ii*) on the basis of the strong, positive, emotional tie between them. *Id*. at 4.

By contrast, the record in this case shows that CRH was placed with her foster father shortly after birth and that respondent's parental rights were terminated when CRH was still an infant, just over three months old. Unlike the years of care and bonding between the child and the woman in *In re CJM*, there was simply no time for CRH's foster father to develop a "strong positive emotional tie or role in the child's life" that would make him her relative under § (1)(j)(*ii*). Apparently recognizing this lack of time in cases involving infants, our Legislature added the following phrase to § (1)(j)(*ii*): "or the child's parent's life if the child is an infant." The record in this case lacks evidence of any relationship, let alone a strong positive relationship, between the foster father and respondent. Because CRH's foster father is not a relative under § (1)(j)(*ii*), the trial court was not required to explicitly consider CRH's placement with him before finding that termination of respondent's parental rights was in CRH's best interests.[3]

Affirmed.

                              /s/ Thomas C. Cameron
                              /s/ James Robert Redford
                              /s/ Kristina Robinson Garrett

---

[3] Because CRH's foster father, who is also the father of one of her half-siblings, is not a relative, his wife, CRH's foster mother, likewise is not a relative.