*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* B. M. ORTIZ, Minor.

UNPUBLISHED
January 22, 2026
2:42 PM

No. 370326
Wayne Circuit Court
Juvenile Division
LC No. 2016-523784-NA

Before: RIORDAN, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

Respondent-mother appeals as of right the order terminating her parental rights to her minor child, BMO, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist); MCL 712A.19b(3)(c)(*ii*) (failure to rectify other conditions that caused jurisdiction); MCL 712A.19b(3)(g) (failure to provide proper care or custody); and MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent). On appeal, respondent argues that termination was not in BMO's best interests. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

This case involves the termination of respondent's parental rights to BMO.[1] On November 16, 2016, petitioner filed a petition requesting that the trial court authorize temporary custody of BMO.[2] This matter was referred to petitioner after respondent allegedly left BMO and her siblings with an unknown caregiver. After a preliminary hearing, the trial court placed BMO in petitioner's care and found probable

---

[1] BMO's father, X. Smith, is not a party to this appeal.

[2] Petitioner also requested the trial court take jurisdiction over BMO's sister, BNOS, and her half-sisters, D. Ortiz and DDJ. We will address their respective cases only as necessary for context.

-1-

cause for the petition allegations.[3] The trial court required reasonable efforts toward reunification and allowed respondent supervised parenting time.

At the adjudication on January 9, 2017, respondent admitted to not having suitable housing for BMO. The trial court found a sufficient factual basis for assuming temporary custody of BMO. The trial court adopted a service plan, which required respondent to participate in parenting classes, counseling, and drug screens, prove suitable housing and income, and consistently attend parenting time with BMO. Respondent was compliant as of the first dispositional review hearing. At the next hearing, Jacqueline Branch, BMO's case manager, said that respondent's parenting times with BMO and her siblings were "very chaotic." Respondent missed "quite a few[]" parenting times and "was terminated" from individual therapy because she did not attend the therapy sessions. Later, in November 2017, Branch said that respondent completed parenting classes but missed at least 7 of 12 scheduled parenting times. Those parenting times were less chaotic since she started family therapy. The trial court ordered petitioner to file a permanent custody petition, stating that respondent was "simply not making progress."

As of March 2018, respondent attended therapy, but was not in full compliance because she did not have housing and did not complete a psychological evaluation. However, respondent's participation in parenting times "improved a great deal." According to Branch, respondent "applied for a new home" before the May 2018 dispositional review hearing. Regarding her compliance with other services, respondent missed 7 of 14 scheduled parenting times. She needed to complete a psychological evaluation, but was screening negatively for drugs. As of the next hearing, respondent lived in a studio apartment, which did not have enough space for BMO and her siblings.

On February 1, 2019, petitioner filed a supplemental petition, requesting that the trial court terminate respondent's parental rights to BMO. The trial court dismissed the petition because respondent "improved her compliance" with her offered services. Petitioner filed another supplemental termination petition on July 3, 2019. At the hearing in August 2019, Branch claimed respondent completed individual therapy, but not family therapy. Petitioner denied two housing assessments because of safety issues. Branch also said that BMO had a "strong bond" with respondent and did not want her parental rights terminated. The trial court identified the remaining barriers to reunification as to respondent's housing and visitation history. Because these were the only barriers and BMO did not want termination, the trial court denied the petition.

---

[3] At the initial preliminary hearing, respondent told the trial court that "[m]y grandmother has three tribes – Indian – Chippewa, Native American, and Blackfoot." When the trial court said that Native American is a "category," respondent agreed that Chippewa and Blackfoot were the two relevant tribes. The trial court adjourned the hearing for petitioner to comply with the notice provisions of the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq*. Thereafter, following another preliminary hearing a month later, the trial court entered an order stating that "DHHS 120 forms were submitted by registered mail to BIA, 24 Chippewa tribes and 4 blackfeet tribes. More than 10 days have elapsed since each tribe signed for regisered [sic] mail and no tribe finding/notifying court regarding tribal inclusion." The record includes those forms as well. Thus, there does not appear to be any ICWA issue in this case, and we will not address it further.

Respondent was fully compliant with her scheduled parenting time as of the next dispositional review hearing. However, BMO was "acting out" in school and at home. Respondent still needed to complete another home assessment and family therapy. The trial court indicated that it "need[ed] to see progress . . . during the next reporting period if reunification is to become a realistic option."

At a March 2021 hearing, BMO's new case worker, Susanne Miner, said that respondent had appropriate housing but "missed more than a few family therapy sessions." At the next hearing, Miner indicated BMO still was not "ready for reunification[,]" and there was "a real breach in the bond" between BMO and respondent.[4]

On November 18, 2022, Maggie Dunn, the clinical director at BMO's placement, stated that BMO suffered bruises on her head, arms, and thighs after unsupervised parenting times with respondent. The visits were suspended for some time and Children's Protective Services (CPS) began an investigation. Dunn said that BMO "requested to not visit[]" respondent because "she does not feel safe." According to another case worker, Catherine Kabira, BMO still did not want to visit respondent as of February 2023. Kabira claimed that on one recent occasion, while BMO was being driven to visit respondent, BMO "threatened to jump out of a window of the vehicle[.]"

At the next review hearing in May 2023, Bianca Smith, the new case worker, said that BMO's behavior was "spiraling backwards." BMO "became upset" after respondent canceled a couple parenting times. Respondent missed 11 of 17 parenting times since January 2023 and BMO asked for some of the other times "to be ended early." Conversely, BMO was no longer fearful of respondent, and respondent's last parenting time on May 2, 2023 went "very well."

Petitioner filed a supplemental petition to terminate respondent's parental rights to BMO on August 2, 2023. At the hearing, Stephanie Suarez, who supervised BMO's matter for petitioner, said that petitioner substantiated respondent's physical abuse of BMO. Regarding respondent's visitation history, BMO refused three parenting times in January 2023. Respondent canceled two parenting times in February 2023, all of the times in March 2023, and one of four times in April and May 2023. Because she missed six parenting times in a row, respondent's parenting time was terminated in June 2023, so no visitations occurred until October 2023. Ashley Ballard, who supervised the visits, stated that two parenting times in that month went well. Respondent told BMO she "love[d] and misse[d] her" and could not "wait to see her." After respondent canceled one parenting time in October 2023, BMO was "extremely distraught." Additionally, petitioner's referrals for family therapy and a new set of parenting classes were terminated.

Respondent was living with her father and BMO's siblings were living with her older sister, D. Ortiz, who was willing to adopt BMO. According to Suarez, BMO wanted termination of parental rights because she was "ready to be out of foster care and to move on with her life." Respondent said that she was attending individual therapy every month.[5] Respondent attributed her missed parenting times to appointments at her doctor's office and Social Security office. Respondent denied hitting BMO. She

---

[4] At a May 2022 hearing, the trial court terminated petitioner's custody of BMO's siblings and released them to respondent's care.

[5] A case worker could not verify that respondent attended any therapy in 2023.

stated that her bond with BMO was "[n]ot too good[]" at that time, but she loved BMO and wanted her to come home.

The trial court found statutory grounds to terminate respondent's parental rights. Moving immediately to the best-interest determination, the trial court ruled that termination of respondent's parental rights was in BMO's best interests. The trial court indicated that respondent did not benefit from her offered services and could not provide BMO stability. Respondent now appeals.

## II. BEST INTERESTS

Respondent argues that the trial court erroneously ruled termination of her parental rights was in BMO's best interests because she demonstrated parenting ability and had a strong bond with BMO. We disagree.

## A. STANDARD OF REVIEW

This Court reviews for clear error a trial court's determination that termination of parental rights is in a minor child's best interests. *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021). "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012) (cleaned up). A trial court's best-interest determination must be supported by a preponderance of the evidence. *Sanborn*, 337 Mich App at 276.

## B. DISCUSSION

The trial court did not clearly err by ruling that termination of respondent's parental rights was in BMO's best interests.

As noted, the trial court found statutory grounds for termination under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (3)(g), and (3)(j). In addition to finding such statutory grounds, a trial court must find "termination of parental rights is in the child's best interests" before ordering termination. MCL 712A.19b(5). "The child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home, are all factors for the court to consider when deciding whether termination is in the best interests of the child." *Sanborn*, 337 Mich App at 276-277 (cleaned up). Visitation history and the parent's compliance with service plans also are permissible best-interest factors. *Id*. at 277.

Respondent asserts that she had a strong bond with BMO, which weighed against termination of her parental rights. In August 2019, the trial court denied termination in part because BMO was opposed. Respondent indicated that she loved BMO and wanted to care for her. Yet, the record belies the notion that respondent and BMO consistently had a strong and loving bond that would weigh against termination. Petitioner substantiated allegations that respondent physically abused BMO in 2022 by punching her twice, causing bruises on her head and body. After these incidents, BMO did not feel safe with respondent. BMO refused many parenting times in 2023 and ended others early. At the time of the ultimate termination hearing, BMO loved respondent, but wanted termination because she was "ready to be out of foster care and to move on with her life."

-4-

Respondent further argues that termination would break BMO's bond with her sisters. It is in a minor child's best interests to stay together with her siblings "in most cases." *Olive/Metts*, 297 Mich App at 42 (quotation marks and citations omitted). In this matter, D. Ortiz wanted to adopt BMO and already cared for her siblings. Indeed, according to the record currently available to us, the most recent report from Oakland Family Services, dated January 7, 2025, indicates that adoption preparations for BMO were ongoing, and "[i]t is the goal of the agency to file the adoption petition by March 2025."

In addition to the lack of a consistent bond, respondent's inconsistent parenting time history also weighed in favor of termination of her parental rights. Respondent consistently missed parenting times throughout this matter. In 2023, respondent's parenting time was terminated because she missed six times in a row. Respondent blamed medical and Social Security appointments for these missed parenting times, but never contacted petitioner to reschedule. BMO became upset and distraught after respondent canceled parenting times. Additionally, respondent was terminated from family therapy and parenting classes. Her failure to benefit from these services, and her inconsistent parenting time, supported the trial court's finding that she failed to comply with her service plan.

Finally, the trial court properly relied on BMO's need for permanency and stability after her long foster-care placement exceeding seven years. A child's need for permanency, "considering how long the child was in foster care and how long the child might have to wait for [a respondent] to rectify the conditions that still existed, [is] a heavy factor in favor of termination." *Sanborn*, 337 Mich App at 278. This Court emphasized the permanency factor in *Sanborn*, *id.*, when the minor child had been in foster care for 15 months. In this case, BMO was in foster care for far longer. During that time, respondent never established consistent parenting time or consistently showed that she benefited from offered services. A best-interest determination focuses on the child's, not the parent's, best interests. *In re Moss*, 301 Mich App 76, 88; 836 NW2d 182 (2013). Given BMO's extended foster-care placement and respondent's lack of compliance, the trial court did not err by failing to allow respondent additional time to comply before terminating her parental rights.

III. CONCLUSION

For the reasons discussed above, we affirm.

/s/ Michael J. Riordan
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado