*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. KUEK, Minor.

UNPUBLISHED
April 18, 2024

No. 367988
Ottawa Circuit Court
Family Division
LC No. 21-096183-NA

Before: BOONSTRA, P.J., and FEENEY and YOUNG, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to his minor child, MDK, pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist) and (j) (reasonable likelihood of harm if returned to parent).[1] Respondent-father argues that terminating his parental rights was not in MDK's best interests. We affirm.

## I. FACTUAL BACKGROUND

The Department of Health and Human Services (DHHS) alleged that respondent-father had committed acts of domestic violence against respondent-mother in the presence of MDK and that respondents were incarcerated. While respondents were incarcerated, MDK was in the care of his maternal and paternal grandmothers, who both had criminal records that made them inappropriate guardians for MDK. DHHS requested that the trial court remove MDK from respondents' care and exercise jurisdiction. The petition was authorized, MDK was removed and placed in a foster home, and the court granted respondents supervised parenting time upon their release. DHHS created a case-service plan for respondent-father and the trial court ordered respondent-father to participate in and benefit from substance-abuse treatment, individual counseling, parenting classes, and mental-health services. The court also ordered respondent-father to complete a substance-abuse assessment and a psychological evaluation, submit to random drug screenings

---

[1] Respondent-mother voluntarily relinquished her parental rights to MDK during the proceedings and has not appealed.

through DHHS and his probation, obtain and maintain suitable housing, obtain employment, benefit from parenting classes, and participate in parenting time.

Respondent-father's compliance with the court's order was poor, and he failed to demonstrate an ability to maintain stable housing and employment. Respondent-father also failed to comply with court-ordered mental-health treatment, and he combined marijuana with his prescription medication. Kalli Koetsier, respondent-father's case manager, called respondent-father about his noncompliance and he told her "it was none of [her] business" and that "his mental health wasn't part of getting [MDK] back."[2] Koetsier testified that respondent-father was referred to "Reach for Recovery" for substance abuse treatment; he received services for substance abuse through his probation, and he also received random drug screens through probation and DHHS. Koetsier testified that respondent-father was noncompliant with his counseling service through Reach for Recovery and failed to attend all of the sessions.

Early in the case, respondent-father consistently participated in parenting time with MDK, and his supervised parenting time was positive. During unsupervised parenting time, however, respondent-father was late, fell asleep, was not fully engaged with MDK, had unapproved people present, or failed to pick up MDK. Respondent-father also did not take advantage of opportunities to call MDK weekly outside of parenting time. Respondent-father's parenting time became supervised again because of his noncompliance with mental-health treatment[3] and his unpredictable behavior. Respondent-father and MDK had a bond that weakened as the case progressed, and DHHS was unsuccessful in finding a guardianship for MDK with respondent-father's relatives.

DHHS eventually petitioned the trial court to terminate respondent-father's parental rights to MDK pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j). At the termination hearing, the caseworker testified about respondent-father's lack of progress for a majority of the proceedings, and she testified that the barriers to reunification existing at the outset of the case still existed at the time of the hearing. The trial court found that DHHS had established by clear and convincing evidence that termination of respondent-father's parental rights was appropriate under MCL 712A.19b(3)(c)(*i*) and (j) and that termination of respondent-father's parental rights was in MDK's best interests. This appeal followed.

## II. STANDARDS OF REVIEW

If the court finds that the petitioner established one or more grounds for termination of

---

[2] The trial court asked respondent-father if he were "dangerous" if he failed to take his medication, and respondent-father answered that he "could be."

[3] Notably, Keith Morley, supervisor of the Assertive Community Treatment (ACT) Team of Ottawa County CMH, testified that respondent-father was a member of ACT. Morley testified that ACT worked with "severely mentally ill folks" and assisted in making sure members received their medication and treatment through CMH. Respondent-father was under court orders to take his medication, having been diagnosed with schizophrenia, and the police were called to pick him up when he missed his injectable shots through CMH.

parental rights by clear and convincing evidence, the court must order termination of the parent's parental rights if it finds that termination is in the child's best interests. MCL 712A.19b(5); *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). The petitioner bears the burden of proving that termination is in the child's best interests by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013), lv den 495 Mich 856 (2013). In making a best interest determination, the focus is on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). We review "for clear error the trial court's determination regarding the children's best interests." *Brown/Kindle/Muhammad Minors*, 305 Mich App at 637 (quotation marks and citation omitted). A finding is clearly erroneous when, "although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011).

### III. BEST INTERESTS

Respondent-father argues only that the trial court clearly erred by finding that termination of respondent-father's parental rights was in MDK's best interests.[4] We disagree.

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). In its determination, the trial court may consider factors such as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *White*, 303 Mich App at 714.

Respondent-father argues that DHHS left the option of a guardianship for MDK "unexplored" while pursuing termination. In this case, the conditions under MCL 712A.19a(9) that allow a court to consider a guardianship before termination of a respondent's parental rights were not met. See *In re Rippy*, 330 Mich App 350, 359; 948 NW2d 131 (2019) ("[E]ither the DHHS must demonstrate under [MCL 712A.19a(8)] that initiating the termination of parental rights to the child is clearly not in the child's best interests," or "the court must not order the agency to initiate termination proceedings under MCL 712A.19a(8).") (quotation marks and citation omitted). Even if one of these conditions has been met, a court can order a guardianship only "if the court determines that it is in the child's best interests." MCL 712A.19a(9)(c). The trial court in this case did not make a determination that a guardianship would be in MDK's best interests. Further, the record reflects that DHHS made efforts to pursue a guardianship with respondent-father's family and continued those efforts until his family ceased contact with DHHS. Accordingly, respondent-father's argument that the trial court should have established a guardianship for MDK is without merit.

Respondent-father also argues that the bond he has with MDK prevents termination from being in MDK's best interests. While respondent-father and MDK had a strong bond at case outset,

---

[4] Respondent-father does not contest the trial court's findings regarding statutory grounds for termination.

respondent-father's caseworker and MDK's guardian ad litem testified that the bond between respondent-father and MDK had become a "friendship bond" rather than a parental one. The caseworker testified that MDK was no longer upset if parenting time did not occur, if respondent-father failed to pick him up from school, or if respondent-father did not call him. The trial court acknowledged MDK's preference to live with respondent-father, but it emphasized that respondent-father had not maintained stable housing since 2014 and did not have an identifiable place for MDK to live at the time of termination. Respondent-father's caseworker testified that MDK needed permanency and stability after almost two years in a foster placement.

The trial court expressly considered the fact that MDK was not placed with relatives and that respondent-father's family was not involved in MDK's life. The court also found that MDK's young age, the likelihood of adoption, the length of his foster placement, and the lack of cultural considerations weighed in favor of termination. Given respondent-father's issues with housing, employment, substance abuse, mental health, and lack of parenting skills as well as MDK's need for permanency and stability and his age and adoptability, plus the length of the case and the weakened bond between respondent-father and MDK, the trial court did not clearly err by finding that it was in MDK's best interests to terminate respondent-father's parental rights.

Affirmed.

/s/ Mark T. Boonstra
/s/ Kathleen A. Feeney
/s/ Adrienne N. Young