*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* N. VIETA, Minor.

UNPUBLISHED
September 15, 2025
2:20 PM

No. 374813
Jackson Circuit Court
Family Division
LC No. 24-002346-NA

Before: K. F. KELLY, P.J., and PATEL and FEENEY, JJ.

PER CURIAM.

Respondent-mother appeals by right the order terminating her parental rights to her minor child, NV, pursuant to MCL 712A.19b(3)(b)(*i*) (parent's act caused physical injury or abuse) and (*ii*) (parent failed to prevent physical injury or abuse). Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

NV is the daughter of respondent-mother and respondent-father.[1] In September 2024, respondent-mother and respondent-father took NV to the emergency room after noticing that she was showing signs of pain and discomfort in her right leg. Hospital staff conducted x-rays of NV's leg, revealing an acute femur fracture. NV also presented with several areas of discoloration or bruising on her head and lower extremities. A follow-up x-ray revealed that NV had a healing radius fracture near her wrist.

While at the hospital, respondent-father explained to police and medical staff that the previous night, NV was on the bed and began to roll off, so he grabbed her leg to prevent her from falling. However, she did not seem to be in any pain after the incident. The following day, respondent-father was doing "bicycle exercises" with NV's legs to relieve her gastrointestinal discomfort when he heard a "pop," which prompted him and respondent-mother to seek medical

---

[1] The trial court also terminated the parental rights of respondent-father, who is not a party to this appeal.

attention. Respondent-mother claimed she did not witness anything that would explain how NV's injuries occurred. NV's doctors suspected the injury was nonaccidental, and opined that respondent-father grabbing NV's leg and doing "bicycle exercises" did not plausibly explain her injury given the high-velocity impact required to cause a femur fracture in a nonmobile child.

In September 2024, the Department of Health and Human Services (DHHS) filed a petition seeking removal of NV and termination of respondents' parental rights. The trial court entered an ex parte order removing NV from respondents, which recommended reasonable efforts to preserve and reunify the family because the case had not yet been adjudicated. Following a preliminary hearing, the trial court authorized the petition and ordered that DHHS make reasonable efforts towards reunification.

In January 2025, respondent-mother requested the trial court amend the petition to temporary jurisdiction, arguing that under *In re Walters*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369318), the court-ordered services DHHS was providing between NV's removal and the termination proceedings did not "count towards reasonable efforts" because DHHS was attempting to terminate respondent-mother's parental rights. The trial court denied respondent-mother's motion, noting that DHHS was alleging the presence of aggravated circumstances. Respondent-mother also filed a motion for reconsideration, which the trial court denied.

The trial court commenced the termination proceedings in February 2025, and ultimately terminated respondent-mother's parental rights at the initial disposition. The court found by clear and convincing evidence that respondents' actions caused a physical injury to NV under MCL 712A.19b(3)(b)(*i*), and that a parent who had the opportunity to prevent physical injury failed to do so under MCL 712A.19b(3)(b)(*ii*). It also found that termination of respondent-mother's parental rights was in NV's best interests. This appeal ensued.

## II. STANDARDS OF REVIEW

This Court reviews for clear error a trial court's decision regarding reasonable efforts. *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021). This Court also reviews for clear error a trial court's finding that a statutory ground for termination of parental rights has been proven by clear and convincing evidence. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). A finding is clearly erroneous if "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. at 41 (quotation marks and citation omitted).

## III. ANALYSIS

Respondent-mother argues that the trial court erred by determining there were statutory grounds to terminate her parental rights in the absence of reasonable efforts towards reunification and by finding that statutory grounds for termination were proven under MCL 712A.19b(3)(b)(*i*) and (*ii*). We disagree.

## A. REASONABLE EFFORTS

This Court has recognized that, except where aggravated circumstances are present, DHHS must make reasonable efforts towards reunification before it may seek termination of an individual's parental rights:

> Reasonable efforts to reunify the child and family must be made in *all* cases except those involving aggravated circumstances . . . . Absent aggravating circumstances, the DHHS has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights. As part of these reasonable efforts, the [DHHS] must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification. [*In re Simonetta*, 340 Mich App 700, 707; 987 NW2d 919 (2022) (quotation marks and citations omitted; alteration in original).]

Under MCL 712A.19a(2)(a), reasonable efforts are not necessary in cases where "[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in [MCL 722.638(1) and (2)]." MCL 722.638(1) provides, in relevant part:

> (1) The department shall submit a petition for authorization by the court under [MCL 712A.2(b)], if 1 or more of the following apply:

> (a) The department determines that a parent . . . has abused the child or a sibling of the child and the abuse included 1 or more of the following:

> \* \* \*

> (*iii*) Battering, torture, or other serious physical harm. [MCL 722.638(1)(a)(*iii*).]

MCL 722.638(2) further provides that the department must make a request for termination at the initial dispositional hearing "if a parent is a suspected perpetrator or is suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk."

Respondent-mother argues that termination of her parental rights was improper because before the initial disposition, the trial court did not make any findings regarding aggravated circumstances and ordered DHHS to make reasonable efforts, which DHHS failed to do because it was simultaneously seeking to terminate respondent-mother's parental rights.

In this case, DHHS argued that an aggravated circumstance was present, which justified its request for termination at the initial disposition. At the initial dispositional hearing, the trial court found that DHHS's request was justified, stating, "So the particular basis alleged that would justify termination at this stage of the proceeding is that the child . . . has suffered physical injury. We have a child who suffered physical injury. There's unrefuted, clear and convincing evidence this child suffered a broken femur," broken wrist, and bruising. Although the trial court did not explicitly cite MCL 722.638(1)(a)(*iii*), its findings support the existence of an aggravated

circumstance based on serious physical harm to NV. Because an aggravated circumstance was present, respondent-mother was not entitled to reasonable reunification efforts.

While respondent-mother cites *Walters* for the proposition that DHHS cannot make reasonable efforts towards reunification when its goal is termination, the circumstances in *Walters* are factually distinct from this case. In *Walters*, it was "clear from the record that none of the exceptions to DHHS's duty to provide reasonable efforts toward reunification appl[ied]." *Walters*, ___ Mich App at ___; slip op at 4. That is not the case here, where NV's broken femur and radius provided clear and convincing evidence that she was subjected to serious physical harm. Moreover, *Walters* recognized that "reasonable efforts toward reunification are not necessary" where aggravated circumstances are present under MCL 712A.19a(2). *Id*. at ___; slip op at 3.

Respondent-mother's position implies that if a trial court orders DHHS to provide reasonable efforts before the initial disposition, the court is then foreclosed from considering a request for termination at the initial disposition, even where aggravated circumstances are present. *Walters* does not support this position. Although the *Walters* Court discussed DHHS's reunification efforts "during the period between requesting termination and obtaining termination," the opinion does not suggest that the provision of services during this time hampers DHHS's ability to request termination at the initial disposition. *Id*. at ___; slip op at 6. Rather, this Court concluded that DHHS offering reunification services "while it waits for the court to grant its request for termination" does not relieve DHHS of its obligation to establish aggravated circumstances under MCL 712A.19a(2) when it seeks termination at the initial disposition. *Id*. at ___; slip op at 5. Because there is clear and convincing evidence of aggravated circumstances in this case, the trial court properly determined that termination at the initial disposition was appropriate.

## B. STATUTORY GROUNDS

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted). Clear and convincing evidence

> produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. [*Id*. (quotation marks and citation omitted).]

In this case, the trial court found statutory grounds to terminate respondent-mother's parental rights under MCL 712A.19b(3)(b)(*i*) and (*ii*), which provide:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

> \* \* \*

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

(*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

(*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

Respondent-mother argues that DHHS failed to present clear and convincing evidence under MCL 712A.19b(3)(b)(*i*) or (*ii*) because the trial court could not identify whether respondent-mother either caused or failed to prevent NV's injury.

In a case with similar circumstances, this Court held that termination of parental rights under MCL 712A.19b(3)(b)(*i*) and (*ii*) "is permissible even in the absence of definitive evidence regarding the identity of the perpetrator when the evidence does show that the respondent or respondents must have either caused or failed to prevent the child's injuries." *In re Ellis*, 294 Mich App 30, 35-36; 817 NW2d 111 (2011). In *Ellis*, the respondents were the only caregivers to the minor child, who "suffered numerous nonaccidental injuries" that were "highly indicative of child abuse, using a very high force of impact, and inconsistent with any sort of accident." *Id*. at 35. The respondents did not offer any plausible explanation for the child's injuries. *Id*. Nonetheless, this Court concluded "that the trial court properly determined that at least one of [the respondents] had perpetrated the abuse and at least one of them had failed to prevent it; consequently, it did not matter which did which." *Id*.

In this case, the record supported the trial court's determination that respondent-mother or respondent-father "must have either caused or failed to prevent [NV's] injuries," despite the lack of evidence regarding the identity of the perpetrator. *Id*. at 36. There was unrebutted testimony that NV had a fractured femur, fractured wrist, and several areas of discoloration consistent with bruising. Dr. Michelle Johnson, one of NV's doctors, testified that it would take a lot of force to break a femur, even in an infant, and that the injury was likely nonaccidental. Dr. Bethany Mohr, another one of NV's doctors and an expert in child abuse pediatrics, testified that "even a single bruise in a non-mobile infant would raise concern for abuse," and that NV having several bruises was "strongly suggestive" of physical abuse. Further, respondents failed to provide a plausible explanation for NV's injuries, despite being her only caregivers. Dr. Mohr testified that respondent-father grabbing NV's leg to prevent her from falling off the bed and doing "bicycle exercises" did not explain the serious fracture. Given NV's serious injuries, her age, and respondents' lack of a credible explanation for her injuries, the trial court did not need to specifically determine whether respondent-mother caused the injury or failed to prevent it. Because the evidence showed that respondent-mother either caused or failed to prevent NV's injuries, the trial court did not clearly err by finding that statutory grounds for termination existed.

On appeal, respondent-mother does not address whether termination of her parental rights was in NV's best interests. Nevertheless, we would affirm the trial court's finding that termination was in NV's best interests given the serious physical injury she sustained in respondents' care, respondents' continued relationship, and the safety and stability provided by her foster-care placement. See *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011) (affirming a trial court's best-interest determination where the children suffered severe abuse and were thriving in their foster-care placement).

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Sima G. Patel
/s/ Kathleen A. Feeney