*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JORDAN/WEBB, Minors.

UNPUBLISHED
October 24, 2025
10:01 AM

No. 370230
Wayne Circuit Court
Family Division
LC No. 2023-001871-NA

Before: REDFORD, P.J., and CAMERON and PATEL, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating his parental rights to the minor children, CMW, JRJ, JJMJ, and JAJ, under MCL 712A.19b(3)(b)(*i*) (parent sexually abused the child's sibling), MCL 712A.19b(3)(g) (failure to provide proper care or custody when financially able to do so), MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent), and MCL 712A.19b(3)(k)(*ii*) (criminal sexual conduct involving penetration committed by parent against the child's sibling). On appeal, respondent challenges only the trial court's best-interests findings. We conclude that a preponderance of the evidence supports the trial court's determination that termination of respondent's parental rights to the children was in their best interests, and we are not left with a definite and firm conviction that the trial court made a mistake. We affirm.

## I. BACKGROUND

Respondent is the legal father of CMW, JRJ, JJMJ, and JAJ. In May 2023, Children's Protective Services (CPS) investigated allegations that respondent sexually abused CW—the children's half sibling. Respondent was in a relationship with the nonrespondent mother that began when CW was an infant, but they were never legally married. During a forensic interview, CW disclosed that respondent began sexually abusing her when she was 11 years old and the abuse continued until she was 16 years old. CW disclosed that the abuse included both oral and vaginal penetration.

In November 2023, the Department of Health and Human Services (DHHS) filed a petition to terminate respondent's parental rights at the initial disposition under MCL 712A.19b(3)(b)(*i*),

-1-

(g), (j),and (k)(*ii*). Respondent waived the probable-cause determination, and the petition was authorized. The children were released to the nonrespondent mother under the supervision of the DHHS. Subsequently, respondent pleaded no contest to jurisdiction and statutory grounds for termination. The CPS investigation report was used as the factual basis for the plea, and the trial court accepted the facts in the report as true. Based on respondent's plea, the trial court found by a preponderance of the evidence that it had jurisdiction over the children under MCL 712A.2(b)(1) and (2). The trial court also found that the material allegations in the petition were substantiated and that there was clear and convincing evidence to support termination of respondent's parental rights to the minor children under MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*ii*).

The trial court held a best-interests hearing. Lydia Banks, a CPS treatment specialist, testified that it was in the best interests of the children for respondent's parental rights to be terminated based on the allegations that respondent sexually abused CW. Although the three youngest children expressed a desire to maintain a relationship with respondent, Banks opined that the children would be at a significant risk of harm and that a custody order would not adequately provide the children with the permanency, finality, and stability that they needed.

Forensic family clinician Sharon Hamilton-Martin testified regarding the evaluation she prepared on behalf of the Clinic for Child Study.[1] Hamilton-Martin stated that all four children wished to have relationships with respondent. But she expressed that she was concerned for the children's safety based on the nature of the allegations regarding CW and respondent's failure to take responsibility. Hamilton-Martin also expressed concern that the amount and frequency of respondent's self-reported alcohol consumption could affect his judgment and decision making as a parent. Based on her assessment, Hamilton-Martin recommended terminating respondent's parental rights.

Respondent testified that he loved his children, wanted to maintain a relationship with them, and was willing to attend counseling to improve his parenting skills. Despite his no-contest plea, respondent denied having any inappropriate contact with CW. He also acknowledged that he told Hamilton-Martin that he would not change his behaviors because he believed his behaviors were "in line in the first place." Respondent testified that statement remained true. He also stated that he did not intend to engage in inappropriate behavior with any of his four children.

The trial court analyzed the best-interest factors for each child individually. The trial court acknowledged the bond between the children and respondent. It also recognized that the children's placement with the nonrespondent mother weighed against termination. But the trial court determined that it was in the best interests of the children to terminate respondent's parental rights because he posed a risk of future harm to the children based on his egregious actions against CW. This appeal followed.

---

[1] The evaluation report was admitted into evidence.

## II. ANALYSIS

Respondent contends it was not in the best interests of the children for the trial court to terminate his parental rights. We disagree.

We review a trial court's decision that termination is in a child's best interests for clear error. *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021) (cleaned up). "To be clearly erroneous, a decision must be more than maybe or probably wrong." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). "We give deference to the trial court's special opportunity to judge the credibility of the witnesses." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

"If a trial court finds that a statutory basis for terminating parental rights exists by clear and convincing evidence, it is required to terminate parental rights if it finds from a preponderance of evidence on the whole record that termination is in the children's best interests." *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 637; 853 NW2d 459 (2014) (cleaned up); see also MCL 712A.19b(5). The focus of the best-interest determination is on the child, not the parent. *In re Moss*, 301 Mich App 76, 88; 836 NW2d 182 (2013). "[A]t the best-interest stage, the child's interest in a normal family home is superior to any interest the parent has." *Id*. at 89.

"[T]he trial court has a duty to decide the best interests of each child individually." *In re Olive/Metts Minors*, 297 Mich App 35, 42; 823 NW2d 144 (2012). However, "in most cases it will be in the best interests of each child to keep brothers and sisters together[.]" *Id*. (cleaned up). Factors to be considered for purposes of the best-interest analysis include "the child's bond to the parent, the parent's parenting ability, [and] the child's need for permanency, stability, and finality . . . ." *Id*. at 41-42 (cleaned up). A child's safety and well-being and the risk a child might face if returned to the parent's care are also relevant. *In re VanDalen*, 293 Mich App 120, 141-142; 809 NW2d 412 (2011). The court may consider the expert testimony of witnesses like psychologists, therapists, and caseworkers in making its best-interest determination. *In re Conley*, 216 Mich App 41, 44; 549 NW2d 353 (1996). Because a child's placement with a relative militates against termination, see MCL 712A.19a(8)(a), "the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *In re Olive/Metts*, 297 Mich App at 43.

Respondent contends that the trial court did not give sufficient weight to the bond he shared with the children and claims that the court performed a very limited best-interests analysis. We disagree. The trial court acknowledged that respondent had a bond with each of the children, but found that the risk respondent posed to the children outweighed their bond. The trial court stated, "These children deserve to be raised in a safe and stable environment with permanence and stability, and the Court believes that the father is unable to do this based on his egregious actions against one of the siblings in this case." The trial court further stated that respondent's sexual assault of CW "negate[d] any parenting ability that [respondent] has because, at that point in time, he is not able to parent and has demonstrated an inability to parent because he violated what [sic] he says is one of his children[.]" Respondent's testimony also demonstrated his lack of insight—he acknowledged that he told the family clinician that he would not change his behaviors because

he believed his behaviors were "in line in the first place" and testified that statement remained true. The trial court found this testimony troubling given respondent's no-contest plea to statutory grounds for termination. The trial court noted that the CPS investigation report, which was used as the factual basis for the plea, detailed the sexual abuse of CW.

Although respondent and nonrespondent mother were not married, respondent referred to CW as his stepdaughter and testified that he considered CW his daughter. Respondent had been in CW's life since she was a year old. He maintained that he cared for and protected CW. But respondent took advantage of his role and committed heinous acts of sexual abuse against CW. "The doctrine of anticipatory neglect provides that how a parent treats one child is probative of how that parent may treat other children." *In re MOTA*, 334 Mich App 300, 323; 964 NW2d 881 (2020). Respondent's abuse of CW from the age of 11 until the age of 16 was "an especially egregious violation of a child who had looked to respondent for care and protection as a father figure." *Id*. at 322. Respondent's treatment of CW is probative of how he may treat her half-siblings: twelve-year-old CMW, nine-year-old JRJ, eight-year-old JJMJ, and six-year-old JAJ. See *id*. The fact that JJMJ and JAJ are boys is of no consequence because, as this Court has recognized in *In re MOTA*, "abuse is abuse." *Id*. at 323 (rejecting the respondent's "pseudo-psychological argument" that he was not a danger to his sons even though he sexually abused their half-sister, emphasizing that "abuse is abuse"). Although there was no evidence that respondent abused any of his four children, we are not left with a definite and firm conviction that the trial court made a mistake by concluding that the factors that weighed against termination of respondent's parental rights were outweighed by the risk that he may harm his four children.

Respondent further argues that he should have been offered reunification services and given additional time to demonstrate his commitment to the children. We disagree. MCL 712A.19a(2)(a) instructs that "[r]easonable efforts to reunify the child and family must be made in all cases except if . . . [t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in" MCL 722.638(1) and (2). An aggravated circumstance exists when a parent "has abused . . . a sibling of the child and the abuse included . . . [c]riminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate," and the parent is "a suspected perpetrator . . . ." MCL 722.638(1)(a)(*ii*) and (2). "[I]f the court makes a determination that the circumstances in *both* MCL 722.638(1) and MCL 722.638(2) have been demonstrated, DHHS is not obligated to make reasonable efforts to reunify the family" and "the trial court may terminate parental rights at the initial disposition . . . ." *In re Barber/Espinoza*, __ Mich __, __; __ NW3d __ (2025) (Docket No. 167745); slip op at 12. Moreover, "[i]f the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5).

In this case, DHHS petitioned the trial court to take jurisdiction over the minor children and terminate respondent's parental rights after CW alleged that respondent sexually abused her over a five-year period. The allegations included sexual abuse involving penetration. Respondent pleaded no contest to jurisdiction and the statutory grounds for termination. The CPS investigation report was used as the factual basis for the plea, and the trial court accepted the facts in the report as true. Based on respondent's plea, the trial court found by a preponderance of the evidence that it had jurisdiction over the children. The trial court also found that the material allegations in the petition were substantiated and that there was clear and convincing evidence to support termination

of respondent's parental rights to the minor children. The trial court correctly determined that the evidence supported termination under MCL 712A.19b(3)(k)(*ii*), which authorizes termination if a court finds clear and convincing evidence that "[t]he parent abused . . . a sibling of the child," the abuse included "[c]riminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate[,]" and "there is a reasonable likelihood that the child will be harmed if returned to the care of the parent."

Although the trial court's written orders do not explicitly state that the trial court found aggravating circumstances under MCL 722.638(1) and (2), the court implicitly found aggravated circumstances by finding that there was clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(k)(*ii*). "To summarize, MCL 722.638(1)(a)(*ii*) requires a finding that (1) a parent or other listed individual (2) abused the child or a sibling of the child, and (3) the abuse included '[c]riminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.' " *Barber/Espinoza*, __ Mich at__; slip op at 12. MCL 722.638(2) is met when "a parent is a suspected perpetrator or is suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk[.]" The record evidence supported that both MCL 722.638(1) and MCL 722.638(2) were satisfied. Accordingly, DHHS was "not obligated to make reasonable efforts to reunify the family." *Barber/Espinoza*, __ Mich at__; slip op at 12.

A preponderance of the evidence in the record supports that termination was in each child's best interests. The children's need for safety, permanence, and stability outweighs any bond that may exist with respondent. We are not left with a definite and firm conviction that the trial court made a mistake by finding that termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ James Robert Redford
/s/ Thomas C. Cameron
/s/ Sima G. Patel