*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* X. A. FIGUEROA, Minor.

UNPUBLISHED
December 12, 2025
8:44 AM

No. 370719
Wayne Circuit Court
Family Division
LC No. 2022-000156-NA

Before: ACKERMAN, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

This appeal arises from a remand for a best-interests evaluation. The trial court terminated respondent's parental rights to his minor child, XAF, under MCL 712A.19b(3)(b)(*i*) (parent sexually abused the child's sibling), MCL 712A.19b(3)(j) (reasonable likelihood of harm if the child returned to parent), MCL 712A.19b(3)(k)(*ii*) (parent's abuse of sibling included criminal sexual conduct involving penetration), and MCL 712A.19b(3)(k)(*ix*) (parent's abuse of sibling included sexual abuse). An earlier panel of this Court affirmed the statutory grounds for termination but remanded for proper consideration of the child's best interests.[1]

On remand, the trial court conducted a new best-interests hearing and again concluded that termination was in the child's best interests. Respondent now challenges that decision. We affirm.

## I. BACKGROUND

In the prior appeal, this Court summarized the underlying facts as follows:

This appeal involves two half-siblings, XAF and IB. XAF and IB have the same mother but different fathers. Respondent-father is XAF's father. He and XAF's mother were in a seven-year relationship, having met when IB was three or

---

[1] *In re Figueroa*, unpublished per curiam opinion of the Court of Appeals, issued May 18, 2023 (Docket No. 362893).

four years old. Their relationship ended approximately three years before the allegations at issue arose. During and after respondent-father's relationship with XAF's mother, respondent-father actively participated in XAF's and IB's lives.

According to allegations in the petition to terminate respondent-father's parental rights filed by petitioner, the Michigan Department of Health and Human Services (MDHHS), XAF's mother received a phone call from the mothers of two of respondent-father's other children in early January 2022. During the call, one of the mothers indicated that her brother, a friend of respondent-father, discovered a sexually explicit video and nude photo of IB on a cell phone that respondent-father had given to him years earlier. Based on this phone call, XAF's mother asked IB whether respondent-father ever touched her inappropriately. IB disclosed that respondent-father had been sexually abusing her since she was eight years old. XAF's mother took IB to the hospital for medical treatment and testing. IB, 12 years old at the time, tested positive for a sexually transmitted disease (STD). The same day, Child Protective Services (CPS) received a referral alleging that IB had been sexually abused by respondent-father.

CPS referred IB to Kids-TALK Children's Advocacy Center (Kids-TALK) for a forensic interview. During the interview, IB indicated once again that respondent-father began sexually abusing her when she was eight years old. According to the Kids-TALK report, IB disclosed that respondent-father touched her genitals with his fingers, forced her to perform oral sex on him several times, and penetrated her vagina with his penis on numerous occasions. IB also disclosed an occasion when respondent-father took IB, XAF, and the younger brother of respondent-father's girlfriend at the time, to a hotel where he shared a room alone with IB and penetrated her vagina with his penis. IB further indicated that respondent-father penetrated her vagina with his penis in the home that they lived in with XAF and XAF's mother. According to IB, respondent-father last abused her at his home in November 2021.

In mid-February 2022, MDHHS filed a petition requesting that the trial court take jurisdiction of XAF and terminate respondent-father's parental rights under MCL 712A.19b(3)(b)(*i*), (g) (the parent, although financially able to do so, fails to provide proper care or custody for the child), (j), (k)(*ii*), and (k)(*ix*). MDHHS's petition detailed IB's sexual-abuse allegations and respondent-father's three prior contacts with CPS, two of which involved unsubstantiated claims of sexual abuse. It also requested that the court release XAF into his mother's care and custody.

A family court referee held a preliminary hearing where CPS specialist Michelle Davis, the author of the petition, testified that, based on her investigation, it was contrary to XAF's best interests to remain in respondent-father's care. She recommended that XAF be removed from respondent-father's care because of IB's allegations of sexual abuse. Davis did not ask XAF whether he wanted to continue visits with respondent-father and no allegations against respondent-father involved XAF. Davis nevertheless recommended that the trial court suspend visits between

the two. The referee found no evidence supporting suspension of parenting time, so he indicated that he would recommend that the trial court deny that request. The referee found, however, that it was contrary to XAF's welfare to remain in respondent-father's care, citing IB's allegations of sexual abuse. The trial court authorized the petition and ordered supervised parenting time for respondent-father with XAF.

A family court referee, whose findings and recommendations were later adopted by the trial court, held a two-day termination hearing in June 2022. Respondent-father, XAF, and XAF's mother did not testify at either hearing. At the first hearing, IB testified that respondent-father sexually abused her on over 20 occasions. She indicated that she did not tell anyone about the abuse because she was afraid respondent-father would harm her, her mother, or other loved ones. Davis also testified, discussing her interview with respondent-father and his denial of the abuse, as well as her questions to him about IB's positive STD test. Davis further testified about respondent-father's previous CPS contacts involving unsubstantiated claims of sexual abuse. Davis ultimately recommended that the trial court terminate respondent-father's rights to XAF, despite the lack of any evidence that respondent-father ever harmed XAF. She believed that if he posed a risk of harm to one child, he posed a risk of harm to the other, regardless of gender. Davis also acknowledged that, at the time of the hearing, XAF was as old as IB was when respondent-father first started abusing her.

On the second day of the termination hearing, Dr. Dena Nazer, M.D., Medical Director at Kids-TALK, testified about her medical examination of IB. She found IB's injuries to be consistent with sexual abuse. Family Assessment Services' forensic family clinician Robert Geiger, Ph.D., conducted a best interest clinic review, interviewing respondent-father and "servicing staff" to determine the possibility and advisability of reunification between respondent-father and XAF. Dr. Geiger found that respondent-father tended to minimize IB's allegations and denied having abused her. He noted that respondent-father had a positive relationship with XAF, took pride in being a father, and that XAF gave no indication that he felt unsafe with respondent-father. Dr. Geiger did not know whether XAF ever witnessed anything inappropriate between IB and respondent-father. But he concluded that respondent-father's abuse of IB would strain the relationship between XAF and IB. Like Davis, Dr. Geiger ultimately recommended termination of respondent-father's parental rights as in XAF's best interests, even though termination would likely result in XAF experiencing "grief, sadness, and loss."

Based on the evidence of IB's sexual abuse, the trial court found that XAF came under its jurisdiction. The court also found by clear and convincing evidence that statutory grounds for termination existed under MCL 712A.19b(3)(b)(*i*), (j), (k)(*ii*), and (k)(*ix*). It further found that a preponderance of the evidence supported a finding that termination was in XAF's best interests. The referee acknowledged that "there was no testimony or evidence presented that [XAF] was physically or sexually abused." She also appeared to acknowledge that ostensibly XAF and IB

were differently situated because XAF is male and IB is female. Nonetheless, the referee relied on its understanding of XAF's inherent vulnerability as a child to conclude that he was at risk of future harm by respondent-father. Termination was in XAF's best interests, the trial court found, because of respondent-father's sexual abuse of IB, and that the risk of harm because of XAF's vulnerability outweighed the bond he shared with respondent-father. The trial court entered orders adopting the referee's findings and terminating respondent-father's parental rights and releasing XAF into his mother's custody. [*In re Figureoa*, unpublished per curiam opinion of the Court of Appeals, issued May 18, 2023 (Docket No. 362893), pp 1-3 (footnote omitted).]

Respondent appealed that earlier decision, and this Court held that the trial court's best-interests inquiry was too limited because it failed to consider important factors, including respondent's parenting ability, visitation history, bond with XAF, and the child's need for permanency, stability, and finality. This Court therefore reversed the best-interests determination and remanded for further proceedings. *Id*. at 5-6.

On remand, the trial court conducted a three-day best-interests hearing and again concluded that termination was in the child's best interests. This appeal followed.

## II. DISCUSSION

We review the trial court's best-interests determination for clear error. *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 272-273 (citation omitted).

With respect to the termination of parental rights, "[t]he focus of the best-interests inquiry is on the child, not the parent." *In re MJC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365616); slip op at 9. A trial court may consider various factors, including:

the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (quotation marks and citation omitted).]

When, as here, the child is placed with a relative, that placement "is an explicit factor to consider" in the best-interests analysis. *In re Olive/Metts*, 297 Mich App 35, 43; 823 NW2d 144 (2012) (quotation marks and citation omitted). "The trial court's findings need not be extensive; 'brief, definite, and pertinent findings and conclusions on contested matters are sufficient.' " *MJC*, ___ Mich App at ___; slip op at 10, quoting MCR 3.977(I)(1).

The trial court considered numerous factors in concluding that termination was in XAF's best interests: XAF's bond with respondent; respondent's parenting ability; XAF's relative placement with his mother and his well-being while in that placement; XAF's need for

permanence, stability, and finality and respondent's inability to provide the same; the danger respondent posed to XAF in light of his abuse of IB; and the nature of XAF's relationship with IB. The court also considered that respondent pleaded guilty to persuading, inducing, or knowingly allowing a child to engage in child sexually abusive activity for the purpose of producing child sexually abusive material (CSAM), MCL 750.145c(2), and second-degree criminal sexual conduct (CSC-II) with a person under 13 years old, MCL 750.520c(1)(a), and that he faced a lengthy prison sentence. Indeed, respondent was ultimately sentenced to 5 to 15 years' imprisonment for the CSC-II conviction and 8 to 20 years for the CSAM conviction. The trial court concluded that those factors supported termination.

The record supports the trial court's findings, and respondent does not dispute the evidentiary support. Instead, respondent submits that termination was inappropriate because of his assertedly close bond with XAF. That argument is unpersuasive.

The record supports the trial court's finding that the child's bond with respondent had weakened over time. XAF's mother testified that both XAF and IB lived with respondent between March 2020 until August 2021, and XAF shared a strong bond with respondent during that time. But even before the present allegations, the bond became strained when respondent asked the mother to resume care of the children so he could "work on himself." Respondent had not seen XAF since December 2021, and by the time mother testified, XAF had not asked to see or speak with respondent for more than a year.

Moreover, even if the trial court clearly erred in finding deterioration of the bond, that factor alone is not dispositive. The court considered a wide range of factors, all of which are supported by the record, and respondent's assertion of a historical bond is insufficient to render the best-interests determination clearly erroneous.

Affirmed.

/s/ Matthew S. Ackerman
/s/ Stephen L. Borrello
/s/ Anica Letica